Alan **RAGUSA**, Plaintiff,

v.

The **STREATOR POLICE DEPARTMENT**, et al., Defendants.

No. 81 C 4887.

United States District Court,
N. D. Illinois, E. D.

Dec. 31, 1981.

Daryl Driver, Kelly & Driver, LaSalle, Ill., for plaintiff.

Russell Eggert, O'Conor, Karaganis & Gail, Ottawa, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

■ Alan Ragusa ("Ragusa") sues the Streator Police Department,[1] its Chief of Police David Kaschak and Officer William Bohne in a purported civil rights action under 42 U.S.C. § 1983 ("Section 1983"). Both policemen are alleged to have deprived Ragusa of property without due process of law by having impounded Ragusa's 1969 GMC pickup truck[2] and then having "refused or neglected to complete the proper release forms when duly requested to do so by [Ragusa]" (Complaint ¶ 9).

---

1. Of course the Department is not a legal entity, and this action is subject to dismissal as to it on that ground alone. If Ragusa were to replead by naming a legal entity, continuing to rely only on the naked allegation (Complaint ¶ 4) that the individual defendants "acted toward Plaintiff under color of the statutes, ordinances, customs and usage of the State of Illinois, City of Streator and the Streator Police Department," he would simply generate a further waste of time and money. Either on the face of the Complaint or with appropriate affidavit support for a summary judgment motion (depending on how one reads Powe v. City of Chicago, 664 F.2d 639 (7th Cir. 1981)), the new pleading would in all likelihood be equally unsuccessful as to the municipal defendant.

2. Complaint ¶ 7 attributes the impoundment to a citation against Mrs. Ragusa for having lacked a valid registration for the vehicle. Ragusa argues in his memorandum opposing defendants' motion that no provision of Illinois law permits such impoundment. Defendants' memorandum asserts on that score:

> There is no allegation that the citation issued to [Ragusa's] wife was factually or legally defective in any respect, or that the plaintiff did in fact have a valid registration for his truck.
> When plaintiff demanded, in a letter from his former lawyer, that the truck be returned he was told that he need merely produce evidence that the truck was in fact his. Although plaintiff's former lawyer was told this

in December of 1979, plaintiff did not get around to actually producing evidence of title to his truck until September 25, 1980. When he did so, the truck was immediately released to him.

During the time that plaintiff's truck was impounded, while defendants were waiting for plaintiff to produce some evidence that the truck was actually his, a former prisoner in the Streator city jail (not a party to this case) broke the windshield. The replacement cost of the windshield was apparently about $160.00. Some items of personal property were apparently stolen as well.

The defendants had possession of the pick-up truck at the time the windshield was broken and the personal property stolen, and they have accordingly already acknowledged their responsibility for it. The Streator Police Chief offered to pay for the broken windshield in December of 1979, nearly two years ago. Defendants remain willing to pay for the windshield—as well as any of the personal property which was stolen and for which the plaintiff can furnish reasonable documentation—to this day. All defendants ask is some reasonable proof of the claimed losses.

In ruling on the current motion this Court is of course limited to the matters alleged in the Complaint. It must therefore, at least for present purposes, ignore defendants' factual assertions.

While the vehicle was in custody the officers "or others not presently known to [Ragusa] intentionally or negligently removed or allowed to be removed [various] items of personal property" (Complaint ¶ 10) of an alleged total value of some $1100, and the windshield was damaged requiring $160 in repairs. Finally the officers "or others not presently known to [Ragusa] either sold the aforesaid property at auction without notice to [Ragusa] or otherwise intentionally or negligently converted that property to their own personal use" (Complaint ¶ 11).

Defendants have moved to dismiss Ragusa's Complaint. For the reasons stated in this memorandum opinion and order, their motion is granted in part and denied in part.

### Ragusa's Failure To State a Federal Claim for Negligence

Civil case filings in this District Court during 1981 have once again followed the familiar pattern of breaking all previous annual records by a wide margin. As a concomitant to that increase without any corresponding increase in the number of judges,[3] calendars grow even larger and more unmanageable. To some extent the increased influx is due to expanded sources of federal jurisdiction. But all too much of this growth industry is traceable to frivolous actions (in the federal sense) like Ragusa's negligence claim.

Defendants' supporting memorandum said they would (as they must) treat the Complaint's allegations as true for purposes of their motion. Despite that, defendants have made a number of factual statements in their memoranda (of which this opinion's footnote 2 reflects only one example) that belong in a motion for summary judgment rather than a motion to dismiss. But taking the Complaint at face value, its negli-

gence claims are remarkable primarily for having totally ignored two controlling United States Supreme Court decisions[4] handed down a few months before this action was filed at the end of August 1981.

■ In June 1981 *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) had put it beyond question that the determination of what process is due[5] for a negligent deprivation of property like that alleged by Ragusa depends on whether "the tort remedies which the State of [Illinois] provides as a means of redress for property deprivations satisfies the requirements of procedural due process" (*id.* at 1914). *Parratt* also taught that under circumstances comparable to those alleged by Ragusa a *post* deprivation hearing satisfies the requirements of due process. All that means is the availability of a conventional tort remedy in the Illinois courts, an action plainly available to Ragusa. Though definitive in nationwide terms, *Parratt* scarcely represented new law. *Bonner v. Coughlin*, 517 F.2d 1311, 1320 (7th Cir. 1975), *modified en banc* 545 F.2d 565 (1976), *cert. denied* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978).

Justice Powell's concurrence in *Parratt* might have been written for this case (101 S.Ct. at 1922 n.13):

> The present case . . . illustrates the extent to which constitutional law has been trivialized, and federal courts often have been converted into small-claims tribunals. There is little justification for making such a claim a federal case. . . .

If Ragusa's negligence claim has substance he is free to assert it in the Illinois courts without having to overcome any jurisdictional hurdles. It is frankly difficult to understand why he felt compelled, in the face of *Parratt* and with a readily available remedy elsewhere, to add (as Justice Powell

---

**3.** Indeed the inevitable delays in filling judicial vacancies compound the problem.

**4.** Ragusa's Complaint flouted not only the *Parratt* case next discussed in the text but the slightly later *City of Newport v. Fact Concerts, Inc.*, —— U.S. ——, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), which held punitive damages una-

vailable against municipal defendants in Section 1983 actions. Ragusa prayed such damages against the "Police Department" as well as the individual defendants.

**5.** This inquiry is essential to a viable Section 1983 claim.

added) to "an overburdened federal system."

Accordingly defendants' motion to dismiss is granted as to the Complaint's claims of their negligence.[6] This ruling extends as well to allegations that "others not presently known to [Ragusa] *intentionally*" took action that injured Ragusa, for such allegations would at worst charge defendants with negligence in having failed to prevent the possibility of such action.

### Ragusa's Claim for Defendants' Intentional Misconduct

 There remain for consideration the Complaint's allegations of *intentional* misconduct by the individual defendants. Such allegations do survive a motion to dismiss a Section 1983 lawsuit, under *Kimbrough v. O'Neil*, 545 F.2d 1059, 1061 (7th Cir. 1976). However Ragusa would then be left with only a piece—and the more difficult piece—

of his possible claim. This Court will leave it to Ragusa to determine whether under the circumstances he wishes to dismiss this action without prejudice or to pursue the claim, as limited by this order, in this Court.

### Conclusion

As indicated at the outset of this opinion, defendants' motion is granted in part and denied in part. At the December 31, 1981 status hearing at which this opinion will be announced to counsel, the Court will determine what proceedings should appropriately follow.

---

**6.** This opinion expresses no views as to the possible maintainability of negligence as a pendent claim to a viable Section 1983 claim.