**Andrea EATON, Plaintiff,**

v.

**CITY OF SOLON, Charles J. Smercina, Mayor, Arthur Korkowski, John Rachocki, Anthony J. Celebrezze, Jr., Defendants.**

No. C83–4668.

United States District Court,
N.D. Ohio, E.D.

Dec. 13, 1984.

Joseph W. Diemert, Jr. & Associates Co., L.P.A., Cleveland, Ohio, for plaintiff.

Charles T. Riehl, Law Director, City of Solon, Victor Leo, Thomas G. Longo, Asst. Law Director, Cleveland, Ohio, for City of Solon, Charles J. Smercina, Mayor, Arthur Korkowski and John Rachocki.

John T. Williams, Asst. Atty. Gen., Columbus, Ohio, for Anthony J. Celebrezze, Jr.

## MEMORANDUM OF OPINION AND ORDER

KRENZLER, District Judge.

In this case, the plaintiff is asking the court to order the city of Solon, Ohio, to issue a building permit for a single-family, "Geodesic Dome home." The plaintiff is also seeking money damages, both compensatory and punitive, for the City's failure to issue the permit, and an injunction mandating the issuance of the permit. The action has both federal claims and pendent state claims. The federal claims are alleged violations of Title 42 U.S.C. §§ 1983 and 1985.

Although inartfully drawn, the Court concludes that plaintiff's claims for mandamus, declaratory judgment, and injunctive relief constitute pendent state claims under Ohio Rev.Code Ann. chs. 2731, 2721, and 2727, respectively.

This case could be disposed of with a brief opinion, but because the proper scope of actions under § 1983 has become a troublesome and vexatious issue in the federal courts, it merits a more in depth analysis by this Court.

This Court is concerned that recent cases decided under § 1983 have indicated that § 1983 is, in effect, being amended and repealed, not by congressional action but by court decisions. Accordingly, this Court will consider § 1983 in some depth, both in general and as it applies to this case.

## FACTS

The plaintiff, Andrea Eaton, filed a complaint captioned "Complaint for Mandamus, Declaratory Judgment, Damages, and Equitable Relief." The defendants are the City of Solon; Charles J. Smercina, the Mayor; Arthur Korkowski, the Building Commissioner; John Rachocki, a former City Councilman; and Anthony J. Celebrezze, Jr., the Attorney General of the State of Ohio.

The plaintiff proposes to build a home on a parcel of property in the City of Solon, acting as the authorized agent and representative of the owner.[1] She alleges that the defendants, individually and in concert with one another, and by intentional acts under color of municipal and/or state statutes, city ordinances, or regulations, have violated, and will violate in the future, certain of her constitutional rights.

Specifically, plaintiff claims that she is being deprived of her liberty and lawful use of her property without due process of

law, that the actions of the defendants constitute a confiscation of her property without due process of law, and that she is being denied equal protection of laws. She alleges that the defendants have interfered with her private ownership of her property and imposed arbitrary, discriminatory, capricious, and unreasonable restrictions upon the use of her property by the refusal to act upon her application for a building permit.

She further avers that the defendants have acted under the guise of an ordinance which is unconstitutional, in that it imposes arbitrary, discriminatory, vague, and unreasonable standards.

Finally, plaintiff alleges that as a direct and proximate result of the above violations and conspiracy, she has suffered damages. She seeks monetary relief for her damages, attorney's fees, and a permanent injunction against the defendants, jointly and severally, ordering them to grant the building permit.

The defendants, the City of Solon, Mayor Charles Smercina, Building Commissioner Arthur Korkowski, and former Councilman John Rachocki, filed a joint motion to dismiss the complaint.

First, they argue that the plaintiff has made conclusory allegations which are not sufficient to state a cause of action and afford the relief requested under § 1983.

Second, the defendants allege that the plaintiff has no standing to maintain this action because she is not the owner of the property upon which the house is to be built.

Next, the defendants contend that the plaintiff failed to use at least three available state procedures to challenge the action of the Solon building inspector. Specifically, the defendants allege that the plaintiff could have made use of any of the

---

**1.** A power of attorney was executed by Ms. Bernadine Osinski on November 17, 1983, whereby Ms. Osinski authorized plaintiff to (1) enter into any agreements for the purchase of Sublot No. 80, Permanent Parcel No. 952-23-53, in the City of Solon; (2) enter into any agreements for the construction of a home on said

parcel; and (3) bring any applications or legal proceedings in plaintiff's name on behalf of Ms. Osinski for the acquisition of said parcel and for the construction of a home on said parcel. Although executed on November 17, 1983, Ms. Osinski provided that the plaintiff's authority be retroactive, effective August 23, 1982.

following procedures available under state law: (1) a mandamus action pursuant to Ohio Rev.Code Ann. ch. 2731; (2) administrative procedures provided for in the Solon Building Code, Ordinance 1305.07, together with the right of appeal in the Ohio courts under Ohio Rev.Code Ann. ch. 2506; and (3) a declaratory judgment action pursuant to Ohio Rev.Code Ann. § 2721.03.

The defendants cite *Vicory v. Walton*, 721 F.2d 1062 (6th Cir.1983), *rehearing en banc denied*, 730 F.2d 466 (6th Cir.1984), as authority for the proposition that the plaintiff cannot maintain this Fourteenth Amendment due process claim under § 1983, because she had an adequate state remedy which satisfied due process requirements. Defendants claim that since the plaintiff failed to plead or demonstrate the inadequacy of the state processes, she has not stated a claim for denial of due process pursuant to § 1983.

The defendants next contend that the plaintiff has not stated a cause of action under § 1985 because she has not alleged any "class based invidiously discriminatory animus" on the part of the defendants.

Finally, the defendants allege that the federal district court lacks jurisdiction over a suit seeking mandamus of a local public official.

In substance, the defendants argue that the plaintiff is asking the district court to order the issuance of a building permit, a remedy which is inappropriate since the state has adequate remedies which provide all the due process to which the plaintiff is entitled.

Attached to the motion to dismiss is the affidavit of Charles T. Riehl, the Law Director of the City of Solon. He states that the plaintiff has submitted to the Solon Building Department an application for a building permit to construct a "Geodesic Dome home" on a certain lot located within the City of Solon, Ohio. Her application was supplemented by architectural plans for the construction. Riehl states that the application remains incomplete and has not been formally acted upon by the Building Commissioner.

Riehl goes on to state that on or about September 26, 1983, the Building Commissioner of the City of Solon verbally advised the plaintiff that, upon completion of her application, her application would be denied. In considering the plaintiff's application for a permit, the City of Solon solicited and obtained opinions from an appraiser and an architect regarding the advisability of issuing the permit requested.

Finally, the affiant states that the plaintiff has not filed any action in mandamus pursuant to Ohio Rev.Code Ann. ch. 2731 in connection with this matter; has not initiated any declaratory judgment action under Ohio Rev.Code Ann. ch. 2721 in connection with this matter; and has not initiated any other procedure under state statute or local ordinance in connection with this matter.

Attached to the affidavit were the written opinions of the appraiser and the architect and §§ 1301.01–1301.05 of the Codified Ordinances of the City of Solon dealing with the appointment and duties of the Building Commissioner. Also attached was § 1305.07 of the Codified Ordinance of the City of Solon which provides the mechanism for administratively appealing decisions of the building inspector regarding the denial of building permits.

The plaintiff filed a brief and a supplemental brief in opposition to the defendants' motion to dismiss but did not attach any evidentiary material other than the before-mentioned power of attorney.

Because the defendants filed an affidavit with their motion to dismiss and the plaintiff filed the power of attorney, the Court will consider the motion to dismiss as a motion for summary judgment. Fed.R. Civ.P. 12(b) and 56.

### § 1983 IN THE FEDERAL COURTS

The two important legislative and constitutional provisions with which we will deal are 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

Section 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Section 1 of the Fourteenth Amendment to the United States Constitution is as follows:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 1983 was enacted in 1871 and from 1871 through 1961, there were very few cases brought under the statute. In 1961, *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), was decided. Since *Monroe*, there have been thousands of reported and unreported § 1983 cases, and the only thing that is consistent about them is their inconsistency. Law school professors have been having a field day analyzing the courts' decisions as they relate to § 1983. There are almost as many law review articles discussing § 1983 decisions as there are reported cases.

The language and intent of § 1983 are clear and unambiguous. The statute provides, in substance, that any person who, acting under color of law, violates another person's constitutional rights, shall be liable to the injured party in a court of law,

equity, or other proceeding. Still, the statute's simple wording provides no insight into a number of legal questions important to the interpretation and application of § 1983.

Section 1983 does not expressly provide for the type of mental state required by the tortfeasor, whether it be negligence, intentional, or strict liability. It does not provide for an exhaustion-of-remedy rule in state court as a condition precedent to maintaining a § 1983 action in federal court. It does not state that if there is an adequate remedy at state law and in state court for the act committed, one is precluded from maintaining a § 1983 action in federal court. It makes no reference to immunities. It does not establish a priority between various constitutional rights, such as liberty or property under the Due Process Clause. It does not distinguish between procedural and substantive due process.

Yet, despite its facial simplicity, § 1983 affords relief for the myriad of constitutional rights violations which for years went unabated and uncompensated. It has thus become the basis of untold numbers of claims in the federal courts, clogging the dockets and adding to an already frustrating backlog in many courts. Litigants are frequently using § 1983 in the federal courts for their principal relief rather than first going to state court with their lawsuits. While the state and federal courts have concurrent jurisdiction over claims brought under § 1983, the federal courts have received the vast majority of these cases. This substantial expansion of the federal docket with cases which are not infrequently frivolous has discouraged and concerned many federal courts.

The following comments illustrate the attitude of many courts with regard to § 1983 cases.

Justice Powell's concurrence in *Parratt v. Taylor*, 451 U.S. 527, 554, n. 13, 101 S.Ct. 1908, 1922 n. 13, 68 L.Ed.2d 420 (1981) noted that:

The present case ... illustrates the extent to which constitutional law has been

trivialized, and federal courts often have been converted into small-claims tribunals. There is little justification for making such a claim a federal case. . . .

Judge Shadur, in another § 1983 case, *Ragusa v. Streator Police Department,* 530 F.Supp. 814, 816 (1981), commented:

Civil case filings in this District Court during 1981 have once again followed the familiar pattern of breaking all previous annual records by a wide margin. As a concomitant to that increase without any corresponding increase in the number of judges, calendars grow even larger and more unmanageable. To some extent the increased influx is due to expanded sources of federal jurisdiction. But all too much of this growth industry is traceable to frivolous actions (in the federal sense) like Ragusa's negligence claim.

Justice Rehnquist, in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), stated that if all torts committed by state officials were to rise to the dignity of violations of the Due Process Clause, it would make the Fourteenth Amendment a font of tort law to be superimposed on the state systems.

Unfortunately, many courts have dealt with their frustrations by creating a range of burdensome limitations on actions brought under § 1983. Federal courts have been regularly and systematically disposing of § 1983 cases by means other than on the merits. Some have applied the doctrine of abstention. Some have required the exhaustion of administrative or judicial remedies in state court before allowing a federal § 1983 action to go forward. Some have held that if there is an adequate remedy under state law for the alleged constitutional violation, a party is precluded from maintaining a § 1983 action in federal court. Some have broadly expanded the scope of immunities, both absolute and qualified. Some have dramatically limited what actions will be characterized as violations of constitutional rights.

Obviously, many of these limitations are justified and reasonable. Still, the road-

blocks which they can pose for meritorious cases under § 1983 are substantial. For example, if the adequate state remedy-preclusion theory were adopted on a uniform basis, it would, in effect, repeal § 1983 because there is some state remedy for just about every constitutional violation. Similarly, if the exhaustion of state administrative or judicial remedies was required as a condition precedent to maintaining a § 1983 action in federal court, problems of *res judicata* and collateral estoppel would be substantial. For a cogent and detailed discussion of this disturbing trend, see Judge Holschuh's dissent in *Wheeler v. Shearer,* 732 F.2d 531 (6th Cir.1984).

The issues in this case are relevant to the developing preclusion of § 1983 cases from federal court when there is an adequate state remedy. The cases relevant to this trend are discussed and analyzed in the next section of this opinion.

### ADEQUATE STATE REMEDY AND THE PRECLUSION OF FEDERAL COURT ACTIONS UNDER § 1983

In *Patsy v. Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the United States Supreme Court held that it is not necessary to exhaust administrative or judicial remedies as a condition precedent to maintaining a § 1983 action. This holding is consistent with the holding in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which held that § 1983 is supplementary to and independent of any state action, and that it is not necessary to exhaust administrative or judicial remedies as a condition precedent to maintaining a § 1983 action.

Still, the Supreme Court in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), held that a random, negligent taking of property by a state actor contrary to an established state procedure did not constitute a deprivation of property under the Fourteenth Amendment Due Process Clause because the state provided a procedure for redress in the form of a post-deprivation hearing. The adequate state remedy provided all the process that was due under the Fourteenth Amend-

ment and hence, no constitutional violation was stated. The Court held, moreover, that due process was satisfied even though the state relief would not be as complete as relief available under § 1983.

The Supreme Court subsequently extended *Parratt* to intentional deprivations of property, holding, in *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), that an unauthorized intentional deprivation of property by a state employee does not violate due process if a meaningful post-deprivation remedy for the loss is available. In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), however, the Supreme Court ruled that *Parratt* does not apply when an "established state procedure" itself destroys a property interest without according the proper procedural safeguards.

Some lower courts have read the *Parratt* holding broadly, expanding it to mean that in any property-due process case where relief can be given under state law, due process is satisfied and a § 1983 action cannot be maintained. In *Vicory v. Walton,* the Sixth Circuit, interpreting *Parratt v. Taylor,* held that for purposes of § 1983 damage suits, a claim for deprivation of a property interest without due process of law has not been stated unless the plaintiff has pleaded and proved that the state remedy for redressing the wrong is inadequate. "The plaintiff must attack the state's corrective procedure as well as the substantive wrong." *Vicory v. Walton,* 721 F.2d at 1066.

Since the Fourteenth Amendment makes no distinction between liberty and property and does not prioritize these rights, consistency would seem to require the same result in cases dealing with violation of liberty interests as in those dealing with property interests. This would mean that in cases in which deprivation of a liberty interest was alleged, the existence of an adequate state remedy such as a tort action would preclude the § 1983 claim. Nevertheless, some circuits, including the Sixth, have distinguished between liberty and property in-

terests, holding that the existence of adequate state remedies precludes a § 1983 action based on a property right violation, but not a liberty right violation.

In *Wilson v. Beebe,* 743 F.2d 342 (6th Cir.1984), the Sixth Circuit declined to apply *Parratt* to deprivations of life or liberty interests where the allegation was that the state actor used excessive force against the plaintiff. The Court acknowledged, however, that other circuits are making their liberty-due process holdings consistent with their property-due process holdings. Indeed, the United States Supreme Court in *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), while acknowledging that a liberty interest was at stake in the case, found that existing state laws were sufficient to provide all the process that was due.

The inconsistent treatment of liberty and property interests aside, the instant case involves a property interest which is subject to the adequate state remedies preclusion rule of *Vicory.* The Court's inquiry must therefore focus on the question of what facts are necessary to demonstrate that state remedies are inadequate.

Unfortunately, some district courts have misinterpreted *Vicory,* and have understood it to mean that if the state has laws or other procedures that would provide an adequate remedy for a property-due process violation, then the party cannot maintain a § 1983 action.

Based on this interpretation, some district courts have reviewed the state law to determine if there was a form for due process. If there was, these cases were dismissed either on the defendant's motion to dismiss or by summary dismissal by the courts.

However, the fact that statutes, rules, regulations, ordinances, or procedures provide the form of due process does not mean that due process was afforded in every case. It is necessary to look both at the substance of due process as well as the form of due process to determine the adequacy of state remedies.

■ To begin with, a plaintiff must present something more than mere conclusory allegations parroting the words of § 1983 and the Fourteenth Amendment. The plaintiff must allege facts, in some specific detail, upon which she relies in order for the court to determine whether she has properly alleged the manner in which the state has denied her due process. A showing of the adequacy or inadequacy of state remedies, moreover, depends upon the interaction of the parties involved and the part played by each in expediting the state processes provided.

The present action involves an attempt to obtain a building permit. This type of action, as well as similar property, land use, and zoning actions, involves three types of actors. First, there are the legislative bodies, whether state or local, which enact the law and provide the processes, the adequacy of which come under Court scrutiny in the *Vicory* analysis. Second, there are the individual state actors and agencies that implement the government processes. Third, there is the plaintiff who seeks to enforce his or her property right.

The adequacy of state processes can thus be approached from three aspects: the existence and facial validity of remedies enacted by the first group of actors, the timeliness and reasonableness of enforcement by the second group of actors, and the diligence of pursuit of his/her rights by the third actor.

Assuming that state processes which are facially adequate are shown to exist, the question becomes whether the state actors who enforce those processes have acted in a timely and expeditious manner, and have not caused unwarranted, unreasonable, or excessive delays. Such delays, in and of themselves, can violate a person's constitutional rights whether the conduct was negligent or intentional. This is what is meant by the substance of a constitutional right versus the form. Having the form of due process by statute, ordinance, rule, or regulation, without its proper or timely implementation, is as much a constitutional violation as if the established form or procedures themselves violated constitutional rights.

■ Unreasonable delay, whether it be negligent or intentional, by governmental agencies or state actors, in and of itself, is a constitutional violation. There is no lawful reason for delays not related to a legitimate, governmental purpose or function. Hearings must be granted at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550 (1983).

■ A plaintiff, however, cannot make an application to the city for some type of approval or permit and sit idly by. Self-help must be used if he wants to use a § 1983 case to protect his property rights. The mere filing of an application followed by inaction by the governmental agency, in and of itself, is not sufficient to maintain a § 1983 action. If the governmental agency does not act in a reasonable, timely, expeditious manner, the property owner must aggressively and affirmatively assert his rights. By doing so, he is in the best possible position to assert the inadequacy of the state procedures and, thus, a violation of his constitutional rights should the governmental agency remain intransigent.

At the administrative and judicial levels, there are many things that he can do. The more he does and the less the city does to consider his application and dispose of it, the stronger is his position in maintaining a § 1983 case.

At the administrative level, the person can demand a hearing and a decision. This can either be by letter or other written notice. If the governmental agency does not act and causes unreasonable, unwarranted, and untimely delays, the person can bring a mandamus action to force the governmental agency to act. This means that the governmental agency will be forced to either grant or deny any permit or approval or to approve or disapprove the application. It is well established that mandamus may only be used to force the action, and cannot

be used to require a particular conclusion or result.

If ruled against at the administrative level, the property owner can take an appeal to a quasi-judicial local agency or to the courts, if so provided. He should take such appeals in a timely fashion. He should oppose any motions to continue the proceedings and he should not request any continuances. In other words, he should aggressively pursue any appeals.

The state court system is part of the state system, and any unreasonable or unwarranted delays in adjudicating the issues before the court may be part of the state system that denies property-due process. In matters before the courts, the property owner should be prepared for trial and file a motion to advance. This would be another indication that the property owner is doing all that he can to bring the matter at issue to a conclusion in a timely, expeditious manner. Failure of the courts· to act in a timely or reasonable manner would be more evidence of the inadequacy of the state system in affording due process.

If all three of the foregoing groups mentioned and discussed above seriously and timely meet their respective duties and responsibilities and respect the other person's rights, privileges, and immunities under the Constitution, most, if not all, of these property, building permit, land use, zoning type cases would be resolved at the state level, thus eliminating the need for § 1983 actions of this variety.

Many municipalities have adopted, by charter or ordinance, regulations providing time limits in which various administrative and quasi-judicial bodies must act on an application. If these governmental agencies would adopt and apply such reasonable time requirements to all agency decisions, it would certainly go a long way toward eliminating § 1983 suits on the basis of a constitutional violation for unreasonable, unwarranted, and untimely delays. Failure to act in a timely and reasonable manner would increase the probabilities that § 1983 actions would be brought against such governmental agencies for such conduct.

Courts have also been known to condone long delays in processing applications or claims as acceptable hazards of our bureaucracy. It is neither fair nor reasonable for a court, with a flourish of the pen, to characterize a delay of many years as being too insignificant to constitute a violation of Fourteenth Amendment due process. One cannot help but wonder if those judges who have concluded that these delays are not constitutional violations would have the same point of view if they were the participant in the proceedings. There is no lawful, valid, constitutional reason why there should be long, unreasonable, and unwarranted delays in affording persons due process.

■ Having stated the foregoing, it is important to state that the normal time consumed in the state process, administratively and judicially, that is fair, reasonable, and necessary for the orderly and proper functioning of government does not constitute a violation of a person's constitutional liberty- or property-due process rights under the Fourteenth Amendment. In other words, the normal amount of time and money consumed to administratively and judicially process a state claim is not a constitutional violation of due process.

In conclusion, § 1983 confers no added rights on plaintiff beyond providing a remedy for violation of her federal constitutional and statutory rights. Thus, § 1983 cannot be used as the principal source of relief in a property-due process case if the state remedies available to plaintiff provide due process, both in form and substance.

■ It is the courts' responsibility in each § 1983 property-due process action to evaluate both the state process and remedies available to the plaintiff, as well as the actions taken by all the parties involved. In deciding whether a plaintiff has been denied property without due process of law, the court must balance the interests and actions of all the parties and determine (1) whether normal and adequate processes were available to the plaintiff, (2) whether there were unreasonable, unwarranted, or

excessive delays, and (3) whether the plaintiff actively pursued the claim.

### CONCLUSION

Having reviewed all of the operative facts in this case and a brief history and status of § 1983, especially as it relates to property-due process cases, the Court will now reach its conclusions.

This Court will rule on all of the issues raised in the complaint and the motion to dismiss-motion for summary judgment. All of the issues will be ruled on recognizing that the Court's ruling on some of the issues normally would make it unnecessary to rule on other issues.

■ 1. *§ 1985.* Plaintiff seeks relief under 42 U.S.C. § 1985(3) for a conspiracy to deprive her of equal protection of the laws. In order to establish a violation of § 1985(3), the conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Plaintiff has failed to allege facts showing a conspiracy against her because of her membership in a class. Plaintiff therefore fails to state a claim upon which relief can be granted and the Court dismisses the § 1985(3) claim under Fed.R.Civ.P. 12(b)(6).

■ 2. STANDING ISSUE. The plaintiff brings the action in her own name, although she does not allege that she owns the property but, instead, alleges in paragraph 3 of the complaint "that she is the authorized agent and representative of the owners of said parcel of property." Plaintiff premises her standing to bring this action on a power of attorney attached to her brief in opposition to the motion to dismiss representing that she has authority to build the house. Plaintiff presents no other evidence to the Court that she has any interest in the property other than the power of attorney. A § 1983 cause of action is personal to the person who alleges that his or her constitutional rights are violated, and it cannot be delegated to an-

other person. The plaintiff has no standing to maintain this § 1983 action.

While this case could be dismissed on the standing issue alone, it would not serve the best interests of the law and the courts. Through various procedural devices, Bernadine Osinski, who is the real party in interest and thus, a necessary and indispensable party, could enter this case or initiate a new case and these proceedings would begin anew. Therefore, this Court will not dismiss the case on the standing issue.

Assuming arguendo that the plaintiff has standing, she can not prevail as will be explained below.

3. FOURTEENTH AMENDMENT ISSUES. Plaintiff has raised several Fourteenth Amendment issues. These are the denial of equal protection and a deprivation of both a liberty and property interest without due process.

■ A. EQUAL PROTECTION. Plaintiff's equal protection claim is based upon her allegation that the defendants used an unconstitutionally vague ordinance in denying her building permit. Yet, the plaintiff acknowledges that "[a] formal written denial was not granted ...." *Brief in Support of Motion for Preliminary Injunction,* p. 2. Since plaintiff's application for a building permit has neither been formally granted nor denied, she can not convincingly allege that certain ordinances, be they constitutional or not, were used in denying the permit. Since there is no evidence to prove that any formal decision has been made regarding plaintiff's application, the plaintiff has failed to state a claim upon which relief can be granted stemming from the unequal application of unconstitutional ordinances.

### B. DUE PROCESS

1. LIBERTY. Plaintiff has failed to allege facts sufficient to indicate that a liberty interest is at stake.

■ 2. PROPERTY. This Court could dismiss the complaint because *Vicory v. Walton* requires that the plaintiff allege with sufficient detail that state law is inadequate. Plaintiff's complaint is inadequate

because it only makes conclusory allegations. However, the plaintiff or Bernadine Osinski could file for leave to amend the complaint or file a new action after dismissal and this, too, would not be in the best interests of the law or this Court. Further, the defendants filed the Riehl affidavit with all of the operative facts involving the adequacy of state remedies which the plaintiff has not disputed. The defendants have thus supplied the operative facts which the plaintiff neglected to plead. Because we have all of the undisputed facts, the case can now be decided on the merits which is preferable to a dismissal on standing or failure to state a cause of action. Therefore, this Court will act on the motion for summary judgment.

Assuming arguendo that the plaintiff has stated a cause of action under § 1983, she can not prevail for the reasons stated below.

Plaintiff's § 1983 property-due process claim fails because she has failed to allege or provide evidence to create a material issue of fact as to the inadequacy of the state remedies available to her. If plaintiff had provided evidence that she had been diligent in attempts to force the defendants to act by use of these state remedies but had failed in these attempts because either the form or substance of the remedies was inadequate, a material issue of fact as to the adequacy of these remedies would exist. However, the Court concludes from the evidence submitted that there is no material issue of fact as to the adequacy of the state remedies and that moving defendants are entitled to judgment as a matter of law on the § 1983 claim. Thus, the Court grants moving defendants City of Solon, Charles J. Smercina, Arthur Korkowski, and John Rachocki's motion for summary judgment as to the § 1983 claim.

4. The Court declines to entertain plaintiff's pendent state claims for mandamus, declaratory judgment, or injunctive relief pursuant to the doctrine set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Thus, plaintiff's claims for mandamus under Ohio Rev.Code Ann. ch. 2731, for declaratory judgment under Ohio Rev.Code Ann. ch. 2721, and for injunctive relief under Ohio Rev.Code Ann. ch. 2727 are hereby dismissed.

The Court notes that, upon issuance of this order, unreasonable and unwarranted delays on defendants' part in acting on a properly-filed application for a building permit, whether negligent or intentional, may lead to a § 1983 action against them. Furthermore, plaintiff must affirmatively assert her rights through available state remedies or she will not be allowed to maintain a § 1983 action.

5. DEFENDANT CELEBREZZE. Defendant Anthony J. Celebrezze, Jr. was brought into this action under Ohio Rev. Code Ann. § 2721.12, which requires the Attorney General to be served with a copy of the proceeding and heard whenever declaratory relief is sought attacking the constitutionality of a state or ordinance. Because the Court has declined to exercise jurisdiction on the pendent state claim for declaratory judgment under Ohio Rev.Code Ann. ch. 2721, and has dismissed that claim, the Court dismisses defendant Celebrezze as a party defendant.

6. COSTS. Because the plaintiff did not provide evidence to show that she had aggressively pursued her state remedies and because the defendants did not act on the application for more than a year, the costs of this case are to be divided between the plaintiff and defendants, with each to pay one-half of the costs.

IT IS SO ORDERED.