**Robert HAAG, Ani Haag and Michael Haag, Plaintiffs,**

**v.**

**CUYAHOGA COUNTY, Cuyahoga County Welfare Department, Virgil Brown, Vincent Campanella, Timothy Hagan, Marjorie Hall-Ellis, Nancy Graff, Lenita Brooks, Andrea Goodlow, Mamie Hicks, Christopher Wentz and Dr. Jane T. Steckler, Defendants.**

No. C83–4271.

United States District Court, N.D. Ohio, E.D.

July 9, 1985.

Sanford J. Berger, Robert M. Fertel, Cleveland, Ohio, for plaintiffs.

Patrick Carroll, Jeffrey I. Sherwin, Asst. Pros. Attys., Cleveland, Ohio, for defendants (1–11).

Walter A. Rodgers, Quandt, Giffels, Buck & Rodgers, Cleveland, Ohio, for defendant (12).

### MEMORANDUM OF OPINION AND ORDER

KRENZLER, District Judge.

This is another Title 42 U.S.C. § 1983 case (hereinafter referred to as § 1983) in

which the plaintiff, Robert Haag,[1] a father, is alleging that his constitutional right of visitation with his children has been infringed upon by the various defendants under color of law.

Plaintiff's principal argument is that because the Cuyahoga County Welfare Department did not meet its mandated statutory duty, pursuant to Ohio Rev.Code Ann. § 2151.421, he was denied the above-noted right of visitation.

The specific duty alleged to have been breached by the Cuyahoga County Welfare Department was its failure to initiate an investigation of a report of child abuse against Robert Haag and to complete that investigation within the required 30 days.

The format of this opinion will be as follows:

1. A discussion of the allegations of the pleadings and the motions.

2. A review of the relevant facts in chronological order.

3. A discussion of the applicable Ohio law.

4. A review of the current state of the law of Title 42 U.S.C. § 1983, in general, and of the liberty-property due process clause of the Fourteenth Amendment to the United States Constitution, in particular.

5. The Court's decision.

In this case, plaintiff father, Robert Haag, asserts that he was denied his visitation rights with his children by the Cuyahoga County Court of Common Pleas, Division of Domestic Relations (hereinafter "Domestic Relations"), as a direct result of the failure of the Cuyahoga County Welfare Department (hereinafter "Welfare Department") to timely and adequately investigate a report to the Welfare Department of plaintiff father's alleged child/sexual abuse of his minor daughter, Ani. Plaintiff father interprets this denial of his visitation rights with his children to be a denial under color of law of his constitutionally-protected liberty interest in his children without due process of law, and alleges violation by the defendants of plaintiff's federal constitutional rights under 42 U.S.C. § 1983.

Jurisdiction in this action arises pursuant to 28 U.S.C. §§ 1331 and 1343.

PLEADINGS

Plaintiff's complaint is in three counts.

In the first count, plaintiff alleges that he has been denied his reasonable visitation rights with his children by Domestic Relations, and has been denied his rights protected by the Fourteenth Amendment to the United States Constitution as a result of the failure of the Welfare Department to timely and adequately investigate a report made by defendant Dr. Jane T. Steckler on November 11, 1981, to the Welfare Department of sexual abuse of his daughter, Ani Haag, by the plaintiff father, Robert Haag, pursuant to Ohio Rev.Code Ann. § 2151.-421. Plaintiff father, Robert Haag, further alleges that as a result of defendants' actions, he was denied a meaningful opportunity to rebut the charges against him and was caused to suffer severe emotional distress and anxiety.

In the second count, plaintiff again alleges the denial of his visitation rights as a result of the failure of the Welfare Department on another occasion to timely investigate a referral made to them for possible child abuse by the Cuyahoga County Metropolitan General Hospital in June 1980, which referral was made after plaintiff father, Robert Haag, had taken his daughter, Ani Haag, to the hospital for an examination of bruises.

In the third and final count of the complaint, plaintiff, Robert Haag, alleges that

---

1. The present case was initiated by the plaintiff, Robert Haag, and his two minor children, Ani and Michael, pursuant to Title 42 U.S.C. § 1983, for alleged violations of the First, Ninth, and Fourteenth Amendments to the United States Constitution. Because the plaintiffs, Ani and Michael, have failed to state a claim upon which relief can be granted, they will be dismissed as parties plaintiff pursuant to Fed.R.Civ.P. 12(b)(6). Because all of the plaintiffs have failed to state a claim upon which relief can be granted, the claims based on the First and Ninth Amendment violations will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). The case will proceed as a Title 42 U.S.C. § 1983 action by Robert Haag, the plaintiff, against the named defendants for alleged violations of a liberty interest in violation of the Fourteenth Amendment.

the defendant Welfare Department illegally and without authority withheld his wages for an alleged child support arrearage in the amount of $122.40, based upon a letter from a Domestic Relations' referee to the Welfare Department.

Defendants in this action are as follows: (1) Cuyahoga County, Ohio; (2) Cuyahoga County Welfare Department; (3) Virgil Brown, President, Cuyahoga County Commissioners; (4) Vincent Campanella, Cuyahoga County Commissioner; (5) Timothy Hagan, Cuyahoga County Commissioner; (6) Marjorie Hall-Ellis, Director, Cuyahoga County Welfare Department; (7) Nancy Graff, Deputy Director, Cuyahoga County Welfare Department; (8) Lenita Brooks, Chief Supervisor of the Sexual Abuse Unit of the Social Services Division of the Welfare Department; (9) Andrea Goodloe, Supervisor of the Sexual Abuse Unit of the Social Services Division of the Welfare Department; (10) Mayme Hicks, Social Worker with the Social Services Division of the Welfare Department; (11) Christopher Wentz, Social Worker with the Social Services Division of the Welfare Department; and (12) Dr. Jane T. Steckler.

The three County Commissioners and the County employees have been sued both in their official and individual capacities.

## MOTIONS

Pending before the Court are (1) a motion for summary judgment, pursuant to Fed.R.Civ.P. 56, filed by the County defendants; (2) a motion for summary judgment filed by plaintiff, pursuant to Fed.R.Civ.P. 56; (3) a motion to dismiss, filed by defendant Dr. Jane T. Steckler, pursuant to Fed.R.Civ.P. 12(b)(6), as well as a motion for summary judgment filed pursuant to Fed.R.Civ.P. 56; (4) a motion for class certification, filed by plaintiff pursuant to Fed.R.Civ.P. 23(b)(1),[2] and (5) a motion for preliminary and permanent injunctions, incorporated by the plaintiff in the complaint, pursuant to Fed.R.Civ.P. 65.

**2.** Plaintiff seeks class certification of all fathers accused of sexual misconduct and who fail to have their cases timely and adequately investigated by the Welfare Department. He also

## FACTS

The undisputed facts in this case, presented to the Court by the pleadings and evidentiary material attached to the motions in the form of affidavits, reports, journal entries, court pleadings, Welfare Department records, doctors' records, and answers to interrogatories, are as follows.

Robert Haag, plaintiff father, was married to Judy Lynn Haag. They were subsequently divorced, and Judy Lynn Haag resumed her maiden name of Cifranic (hereinafter "Judy Cifranic"). Two children were born of said marriage; (1) Ani, born July 27, 1977, and (2) Michael, born August 31, 1979.

In chronological order, the following events then transpired.

*July 9, 1981:* Domestic Relations' order allows plaintiff father visitation with his two minor children, Ani and Michael.

*July 15, 1981:* Dr. Joanne Hempel, Ani Haag's pediatrician, referred plaintiff father, upon his request to her for the name of a child psychologist to assist Ani in expressing her feelings, to Dr. Jane T. Steckler, clinical psychologist.

*September 6, 1981:* The alleged incident of child sexual abuse, as termed by Judy Cifranic, by plaintiff father of Ani Haag, his four-year-old daughter occurred.

Reports by Drs. Richard Halas and Herschel Pickholtz dated September 6, 1981, that Ani Haag's trauma resulted from the divorce and that plaintiff father, Robert Haag, could not be physically and sexually abusive to his children.

*September 7, 1981:* Judy Cifranic responded to the alleged incident of child abuse by unilaterally discontinuing visitation between plaintiff father, Robert Haag, and their daughter, Ani. This unilateral action was in contravention of Domestic Relations' prior award of visitation rights to plaintiff father.

*September 11, 1981:* Plaintiff father filed a motion with Domestic Relations to

seeks certification of a second class of employees who have had or might have their wages illegally garnisheed based solely upon a letter of a trial referee.

show cause why his visitation rights should not be enforced in accordance with Domestic Relations' July 9, 1981 order regarding visitation.

*October 14, 1981:* Judy Cifranic filed a motion with Domestic Relations seeking a termination of Robert Haag's visitation rights with his two minor children, Ani and Michael. Attached to the motion was the affidavit of Judy Cifranic which stated, in substance, that she had reason to believe that Robert Haag had sexually abused Ani Haag.

*October 15, 1981:* Domestic Relations ordered the staying of the visitation rights of Robert Haag pending a hearing on the motion to terminate the visitation rights. This court order was based upon Judy Cifranic's affidavit.

*November 9, 1981:* The Welfare Department opened a file based on the report of alleged child abuse against Robert Haag.

*November 11, 1981:* Dr. Jane Steckler, a clinical psychologist, reported a claim of sexual abuse of four-year-old Ani Haag by her father, Robert Haag, with the Welfare Department, pursuant to Ohio Rev.Code Ann. § 2151.421. Mayme Hicks, a social worker in the Social Services Department of the Welfare Department, was assigned the case of Robert Haag by her supervisor, Andrea Goodloe.

*November 16, 1981:* Defendant Hicks contacted Dr. Steckler. Dr. Steckler would not provide information unless a release was signed by Judy Cifranic.

*November 17, 1981:* Defendant Hicks telephoned Judy Cifranic and scheduled an appointment for November 19, 1981.

*November 19, 1981:* Judy Cifranic failed to appear at her scheduled appointment with defendant Hicks.

The information contained in the file indicates that there were various efforts by the Welfare Department to conduct an investigation between November 16, 1981, and August 30, 1982, of the report of child abuse. However, on the advice of her attorney, Judy Cifranic refused to cooperate and refused to allow the Welfare Department investigators to have access to her daughter, Ani, the alleged victim of the child abuse. Her attorney was of the opinion that the outcome of the custody/visitation case in Domestic Relations should be determined prior to any further involvement with the Welfare Department, since the case had previously been referred to and closed by the Welfare Department due to unsubstantiated evidence of abuse by Judy Cifranic. Further, Judy Cifranic refused to sign releases or to be interviewed.

It is clear from the file and the evidence before the Court that Judy Cifranic refused to cooperate, that she hampered the investigation, and, in fact, made it impossible to conduct the investigation.

Upon the advice of the Welfare Department attorney, it was decided not to pursue the report of child abuse until after the custody disposition hearing on the motion to terminate visitation which was scheduled to be heard on November 21, 1981.

*November 30, 1981:*[3] Robert Haag met with the Welfare Department social workers, defendants Mayme Hicks and Andrea Goodloe, concerning the report of sexual abuse. Mr. Haag adamantly denied any inappropriate behavior on his part toward his daughter and indicated that he was pursuing his fight in Domestic Relations for complete custody of his children. Ms. Hicks informed Mr. Haag of the difficulty in interviewing Mrs. Cifranic and Ani, and he agreed that it might be best for his daughter to wait until after the dispositional hearing. Subsequent informal hearings were had by Ms. Hicks with Mr. Haag to determine the case status of the custody dispute. The record reflects that Robert Haag was extremely cooperative in the investigation, signing all the necessary releases for the Welfare Department to obtain the necessary evidence regarding the case. Ms. Hicks noted that no requests had been made by either party to initiate any agency input by the Welfare Department regarding the merits of the child abuse allegations. Robert Haag also met with Dr. Steckler and was very cooperative.

---

3. Ms. Hick's records indicate this interview took place on November 25, 1981. Mr. Haag's records indicate the interview took place on November 30, 1981.

*December 3, 1981:* Dr. Jane Steckler, one of the defendants, sent a letter to Mr. John Winchester, a social worker at Domestic Relations, apprising him of the fact that the case had been referred to her for study in regard to alleged child abuse, and of her observations of Ani Haag to date and that she had made the report of alleged child abuse to the Welfare Department.

*August 30, 1982:* The attorney for the Welfare Department, Mr. Charles Cohen, recommended that the report of child abuse be dismissed due to the lack of cooperation by Judy Cifranic. The Court notes that the Welfare Department did not pursue any of the means available to it to force Judy Cifranic or Dr. Steckler to provide them the necessary information or to have access to the child, Ani.

*November 2, 1982:* Defendant Hicks closed the Haag case and included the following closing summary in her report:

Case has remained virtually at a standstill. Mrs. Cifranic continues to remain unavailable for contact by social worker and refuses to allow any contact between social worker and her daughter. Mrs. Cifranic's last telephone contact with the social worker on 07–30–82 was an explanation to social worker that the stance taken by her on this matter was on her attorney's advice.

Discussion with our attorney, Charles Cohen, on 08–30–82 respected this stance. Since the child is in the physical custody of allegedly the non-perpetrating parent who has involved the child in appropriate medical and mental health facilties [sic]. Legal advisor and social worker have not pursued any other means to force Mrs. Cifranic to allow access to child. The courts continue to be involved and seemingly upheld mother's request to cease visitation. To date, no contact has been made with the agency to request any input or further assessment of the situation.

Due to the lack of movement and no further referrals regarding Anni [sic] Haag, this case is closed.

THIS CASE IS TO BE CLOSED
MAYME HICKS, SOCIAL WORKER
ANDREA GOODLOE, SUPERVISOR

Ms. Hicks' affidavit asserts that as a result of the investigation, there was insufficient evidence to base a claim of child abuse against Mr. Haag, and therefore, the case was closed.

Plaintiff, Robert Haag, has not seen his children since September 7, 1981, and according to his affidavit, because of all of the problems he has consented to Ani's and Michael's adoption by Judy Cifranic and her present husband.

OHIO LAW

The facts presented by this case and the Ohio statutory scheme which has been devised to address allegations of child abuse and/or neglect require the Court to examine three separate state agencies: (1) Juvenile Court, which is not a party to this action; (2) Domestic Relations Division, Common Pleas Court (Domestic Relations), which is not a party to this action; and (3) the County Welfare Department.

As set forth in pertinent part by Ohio Rev.Code Ann. § 2151.23, Juvenile Court has exclusive and original jurisdiction:

(A)(1) Concerning any child who on or about the date specified in the complaint is alleged to be a juvenile traffic offender, or a delinquent, unruly, *abused, neglected or dependent child;*

(2) To determine the custody of any child *not a ward of another court of this state;* ....

Ohio Rev.Code Ann. § 2151.23(A)(1) and (2). (Emphasis added.)

The Juvenile Court would acquire exclusive original jurisdiction over a child alleged to be abused if a complaint is filed in Juvenile Court. Pursuant to Ohio Rev. Code Ann. § 2151.35, a complaint would ask the Juvenile Court to make a determination that the child was abused and/or neglected. Ohio Rev.Code Ann. § 2151.353 sets forth the action the Juvenile Court may take if it does find abuse and/or neglect.

In the instant case, we are not confronted with a situation where Juvenile Court

ever obtained jurisdiction. Rather, we have the situation where Domestic Relations maintained its jurisdiction over an ongoing visitation dispute.

The Court of Common Pleas, including Divisions of Domestic Relations, has "full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters," including divorce, annulment, and alimony actions. Ohio Rev. Code Ann. § 3105.011. The court may also award custody of minor children (Ohio Rev. Code Ann. § 3109.04), provide for their support, as well as permit visitation of the children by the parent who has been deprived of their care, custody, and control (Ohio Rev.Code Ann. § 3109.05). Upon the granting of a divorce and the awarding of custody and control of the children, the children become "wards of the court," and Domestic Relations retains continuing jurisdiction over all of the issues involving the minor children. Thus, Juvenile Court would not have jurisdiction to determine the custody of a child who is a ward of Domestic Relations. Ohio Rev.Code Ann. § 2151.23(A)(2), *supra*. In the present case, Domestic Relations has continuing jurisdiction in regard to the custody, support, and right of visitation of the minor children by Robert Haag and Judy Cifranic until they reach the age of 18.

The Welfare Department is an agency of county government[4] and among its many duties is the responsibility of dealing with reports of abused and/or neglected children as provided in Ohio Rev.Code Ann. § 2151.421.

Ohio Rev.Code Ann. § 2151.421, adopted effective November 1, 1977, governs the official reporting, investigation, and disposition of incidents of child abuse and/or neglect. The purpose of this statute is to protect children from abuse and/or neglect and to eliminate the source of any such abuse.

The statute specifically states:

Reports required by this section shall result in protective services and emergency supportive services being made available by the county department of welfare or children services board on behalf of children about whom the reports are made, *in an effort to prevent further neglect or abuse, to enhance their welfare, and whenever possible, to preserve the family unit intact.* (Emphasis added.)

The substance of the statute requires that whenever a suspected incident of child abuse and/or neglect is reported, an investigation must be commenced within 24 hours and completed within 30 days.[5] The authority and responsibility to conduct such investigations and to submit the necessary reports is vested in the county department of welfare or the children services board.[6] Provision is also made for the investigations to be conducted in cooperation with law enforcement agencies.

The statute further directs the department of public welfare to exercise its rule-making authority under Chapter 119 of the Ohio Revised Code to aid in the implementation of this section. Accordingly, Chapter 5101:2–35 of the Ohio Administrative Code (O.A.C.), effective November 22, 1981, addressing child abuse and neglect was filed, with various amendments and sections subsequently adopted.

The statute provides for the mandatory reporting by health care professionals and permissive reporting by any other individual "having reason to believe" that a child has suffered abuse and/or neglect. Any person required to report suspected child abuse and/or neglect is guilty of a fourth-degree misdemeanor if they fail to do so. O.A.C. 5101:2–35–10.

County Welfare Departments are required to investigate each report of suspected child abuse and/or neglect. This

---

4. The county Welfare Department is established pursuant to the provisions of Ohio Rev.Code Ann. § 329.01 and performs duties under the control and direction of the board of county commissioners. Ohio Rev.Code Ann. § 329.04

5. O.A.C. 5101:2–35–16 (effective November 22, 1981), and O.A.C. 5101:2–35–28 (effective Octo-

ber 1, 1982). Plaintiff does not challenge this 30-day period in which the investigation is to be completed as being a denial of his right to due process.

6. Hereinafter, reference will only be made to the Welfare Department.

responsibility may not be delegated to another agency, whether it be public or private.

The Welfare Department has the authority and responsibility to gather information from all relevant sources, including interviews with the child victim, the alleged perpetrator and various witnesses, medical records, school records, and all other sources that may provide relevant information. The Welfare Department may also arrange for necessary medical or psychological services. O.A.C. 5101:2–35–27.

If the investigation cannot be conducted because the protective services worker is refused entry into the home or facility where the child resides, or is refused access to school or medical records, the Welfare Department may request assistance from the appropriate law enforcement agency or the court for the necessary authorization to perform the mandated investigation.

Upon completing the investigation, the Welfare Department is required to make its recommendation to the county prosecutor or city law director as to whether or not a report of suspected child abuse should be made, to protect those children brought to its attention.

Several other relevant provisions of the statute provide in pertinent part:

... anyone participating in the making of the reports, or anyone participating in a judicial proceeding resulting from the reports are immune from any civil or criminal liability that might be incurred or imposed as a result of their actions.
... the physician-patient privilege shall not be a ground for excluding evidence regarding a child's injuries, abuse, or neglect in any judicial proceeding resulting from a report submitted pursuant to R.C. § 2151.421.
... any report made under this section is confidential.

Plaintiff father's allegations are primarily directed to the Welfare Department. In essence, plaintiff father blames the inaction of the Welfare Department and its failure to timely investigate the report of child abuse against him, for his having been denied visitation rights by Domestic Relations. In other words, plaintiff father makes a "cause" and "effect" argument; i.e., the "effect" being the denial of his visitation rights with his children, the "cause" being the failure of the Welfare Department to conduct a timely investigation.

TITLE 42 U.S.C. § 1983

Because of the stormy history of § 1983 and the large volume of reported cases which has evolved, this Court deems it advisable to proceed with a somewhat detailed discussion of this subject.

42 U.S.C. § 1983 provides as follows:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Two prerequisites to maintaining a § 1983 action are:

(1) the perpetrator must have acted under color of state law; and

(2) the conduct must have deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States, *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir.1983), *rev'd and remanded sub nom, Brandon v. Holt*, 469 U.S. ——, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

When one reads all of the reported § 1983 cases, one could reasonably conclude that the federal courts are looking for ways and means of eliminating § 1983 as a viable form of relief in federal court

or, at least, limiting § 1983 cases in federal court which allege substantive due process violations to only those cases in which the governmental conduct complained of is so abhorrent and abusive that it "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

There appears to be a trend to repeal § 1983 by court decree rather than by congressional action by the use of several methods: (1) defining the alleged conduct of the state actor to be a common law tort rather than a constitutional tort; (2) abstention; (3) immunity; (4) exhaustion of remedies; and (5) adequacy of state remedies, either administrative or judicial. The impact of applying these methods has been to preclude the maintenance of a § 1983 action. *See Eaton v. Solon*, 598 F.Supp. 1505 (N.D.Oh.1984).

The underlying basis of this trend seems to be that since individuals' rights are created by state law, if the state law provides a remedy for a violation of these rights by governmental action, then the remedy should be sought in the state courts. In other words, there is an advocacy of the application of the adequacy of the state remedy-preclusion theory.

*Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), was a case involving a violation of an express constitutional right, in particular, an alleged violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. Four important holdings which it set forth were:

(1) The purposes for enacting § 1983 were:

  (a) To override certain kinds of state laws;

(b) To provide a remedy where state law is inadequate;

(c) To provide a federal remedy where the state remedy, though adequate in theory, was not available in practice.

(2) § 1983 is supplementary and in addition to any available state remedy.

(3) The state remedy need not be first sought and refused before § 1983 may be invoked. In other words, it is not necessary to exhaust state remedies as a condition precedent to maintaining a § 1983 action.

(4) The definition of action taken "under color" of state law is the "misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.*

*Patsy v. Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), reaffirmed the holdings of *Monroe v. Pape, supra,* by holding that it was not necessary to exhaust state administrative or judicial remedies as a condition precedent to maintaining a § 1983 cause of action in federal court.

Following *Monroe v. Pape, supra,* and for 20 years thereafter, there were in excess of 20 major cases brought under § 1983 and reported by the United States Supreme Court which discussed and defined common law torts, constitutional torts, due process generally, procedural and substantive due process specifically, pre and post deprivation remedies, adequacy of state remedies, express constitutional rights, fundamental constitutional rights not expressly provided for in the Constitution or its Amendments, governmental liability, conduct of governmental actors, liability of individual state actors, and immunities.[7]

---

7. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), *reh'g denied,* 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850; *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), *reh'g denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606; *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Moore v. East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785; *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *reh'g denied,* 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Boddie v. Connecti-*

In 1981, there appeared to be a major change in the direction of the Supreme Court's treatment of § 1983 cases, as evidenced by its decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Whereas, *Monroe v. Pape, supra,* permitted the maintenance of a § 1983 cause of action for any constitutional violation by a state actor under color of law, *Parratt v. Taylor, supra,* limited this general right. *Parratt v. Taylor, supra,* involved the negligent taking of a prisoner's personal property by a state employee. The Court held that in a property-procedural due process case involving the random negligent taking of property by a state actor that, although there was a constitutional deprivation of one's property interests, it was not without due process because the state provided an established post deprivation remedy that adequately afforded the plaintiff his due process. Accordingly, no constitutional deprivation occurred and thus, a § 1983 action could not be maintained,[8] even though the state remedy might not afford all of the relief that may be available under § 1983.

It is important to distinguish the Supreme Court's treatment of *Monroe v. Pape, supra,* which involved a violation of the Fourth Amendment resulting from an unreasonable search and seizure, from *Parratt v. Taylor, supra,* which involved a procedural due process case concerned with an individual's deprivation of his personal property.

The Fourteenth Amendment to the United States Constitution provides, in part, "... nor shall any State deprive any person of life, liberty or property, *without due process of law*; ...." (Emphasis added.)

Because of the limiting language in the Fourteenth Amendment, that is, "without due process of law," not all deprivations of life, liberty, or property are prohibited. Only those deprivations which are made "without due process" violate the Fourteenth Amendment.

It was this limiting language which opened the door for the United States Supreme Court to make its determination that certain types of cases brought under § 1983 alleging property deprivations in violation of the Fourteenth Amendment should be brought in state court, if there was an established pre or post deprivation remedy in place that would be considered adequate. If there was such a remedy, then the requirements of due process would be satisfied and, accordingly, a § 1983 action could not be maintained.

The distinction between *Monroe v. Pape, supra,* and *Parratt v. Taylor, supra,* could be made because of the due process language of the Fourteenth Amendment. The Supreme Court evidently was of the opinion that in a property-procedural due process case, if a state provides an adequate pre or post deprivation remedy, due process is afforded. Under such circumstances, it would not be necessary to clog the federal courts with § 1983 cases. Such reasoning is also consistent with the beliefs of those who do not wish to infringe or interfere with the rights of states to provide rights to its citizens and also provide a remedy for deprivation of those rights.

Subsequently, the United States Supreme Court decided *Hudson v. Palmer*, 468 U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), which held that in a property-procedural due process case where the taking of property by a state employee was

---

cut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1968); *reh'g denied,* 392 U.S. 947, 88 S.Ct. 2305, 20 L.Ed.2d 1413 (1968); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

**8.** Judge Jones, concurring in part and dissenting in part in *Robert Smith, Jr. v. Warden James Rose,* 760 F.2d 102 (6th Cir.1985), interprets *Parratt* as:

... operat[ing] within the tradition of *Monroe* and provid[ing] a gloss on *Monroe's* statement that a § 1983 action may be brought when a state remedy is adequate in theory but not in practice.... *Parratt* has particularized the analysis of *Monroe,* rather than undermined *Monroe's* holding that the § 1983 remedy is supplemental to state remedies. At pp. 107–108.

intentional rather than negligent, and where there was an adequate post deprivation remedy available under state law, a § 1983 action cannot be maintained. The Supreme Court thereby extended its ruling in *Parratt v. Taylor, supra,* involving the negligent, random taking of property to the facts of *Hudson v. Palmer, supra,* involving the intentional taking of property. These were both procedural due process cases involving property.

The principal thrust of both *Parratt v. Taylor, supra,* and *Hudson v. Palmer, supra,* is that in a procedural due process case where property is taken by either negligent or intentional means, if there is an adequate state remedy, a person is precluded from maintaining a § 1983 action.

Serious questions must be answered when reviewing the major reported cases to determine the current state of the law of § 1983 and its future as a viable cause of action.

The critical question to be addressed is whether the ruling of *Parratt v. Taylor, supra,* is to be limited only to a post deprivation-property procedural due process case involving a prisoner wherein adequate state remedies are provided, or whether *Parratt v. Taylor, supra,* stands for something more.

There are those who argue that *Parratt v. Taylor, supra,* is to be interpreted broadly, meaning that when there is either a liberty or property, procedural or substantive, due process violation and there is an adequate state remedy available to redress that violation, the action must be brought in state court as a common law tort, thus precluding a § 1983 cause of action from being maintained in federal court.

The reason expressed for this broad interpretation is simple. The state is viewed as both the provider and protector of personal rights. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The state statutorily creates and defines rights and remedies which are interpreted by state courts of law. If a tort is committed by a state actor involving a liberty or property interest and there is an adequate state remedy, then that is all the process that is due. Thus, there is not an infringement of a liberty or property interest under color of law by a state actor without due process because there exists a state remedy.

This explanation would normally suffice if it were to be held that common law torts and constitutional torts are synonymous and that the rights which are respectively infringed upon are of comparable stature, and that due process is satisfied by any type of state remedy that would be considered adequate. What remedy under state law would be considered adequate to remedy a deprivation, however, is a subjective determination.

But this simple reasoning ignores the language of Title 42 U.S.C. § 1983 which expressly states, in effect, that a § 1983 cause of action may be maintained when there are violations of "rights, privileges or immunities secured by the Constitution and laws . . ." under color of law.

Section 1983 makes reference to constitutional violations, not to common law torts. Section 1983 also does not expressly state that if there is an adequate state remedy that due process has been afforded in liberty-property due process cases.

We are thus faced with the two extreme positions. On the one hand, there is the holding of *Monroe v. Pape, supra,* which, as noted above, held that the § 1983 cause of action is supplementary and in addition to any state remedy, and that it is not necessary to exhaust state remedies as a condition precedent to maintaining a § 1983 action. If this holding were followed completely, it would permit § 1983 actions to be maintained regardless of the availability or adequacy of any state remedy.

On the other hand, if *Parratt v. Taylor, supra,* and *Hudson v. Palmer, supra,* were interpreted as providing that whenever there is an adequate state remedy for any liberty or property deprivation under color of law, the so-called adequate state remedy must be pursued and a party would

be precluded from maintaining a § 1983 cause of action.

The critical issue, therefore, is which of these two extreme positions is the law of the land or whether there is a middle ground.

This Court believes that the case law should provide guidelines which: (1) define the nature of a constitutional tort that would permit the maintenance of a § 1983 cause of action; and (2) define the nature of a common law tort that would require the cause of action be maintained in state court when there is an adequate state remedy which would be considered due process.

In order to thoroughly understand § 1983 and the holdings thereunder, it is necessary to recognize and understand the meaning and interrelationships of the following terms: express constitutional rights and/or prohibitions of governmental action against these rights, fundamental substantive rights not expressly defined in the Constitution; due process, procedural due process, substantive due process, liberty, property, common law tort, constitutional tort.

## EXPRESS CONSTITUTIONAL RIGHTS OR PROHIBITIONS AGAINST UNREASONABLE GOVERNMENTAL ACTION

The Bill of Rights, which contains the first ten Amendments to the Constitution of the United States, provides certain express individual rights upon which the government of the United States may not infringe. "The Constitution is a charter of negative liberties; it tells the state to let people alone; ...." *Bowers v. DeVito,* 686 F.2d 616 (7th Cir.1982). Those most commonly involved in § 1983 cases are the First Amendment's right to free speech, the Fourth Amendment's prohibition against unreasonable searches and seizures, and the Eighth Amendment's prohibition against cruel and unusual punishment.

## CONSTITUTIONAL RIGHTS NOT EXPRESSLY STATED IN THE CONSTITUTION OR ITS AMENDMENTS

There are certain other fundamental substantive rights which although not expressly defined in the Constitution or its Amendments have been given the status of constitutional rights. Examples of such rights are the right to travel, *United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966); freedom to choose and pursue a career, *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923).

## DUE PROCESS—SUBSTANTIVE AND PROCEDURAL

The term "due process" is not defined in either the Fifth or Fourteenth Amendments. However, the courts have defined due process in terms of (1) procedural due process and (2) substantive due process. The Supreme Court recently held, "[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct." *Cleveland Board of Education v. Loudermill,* 470 U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

### (1) *Substantive Due Process*

Substantive due process involves the fundamental or natural rights of an individual. The restriction upon the scope and character of governmental activities against an individual is known as substantive due process. The purpose of the Fifth and Fourteenth Amendments is to restrict or limit arbitrary and unreasonable governmental conduct. The Fourteenth Amendment, applying the "due process" clause to the states, does not afford positive rights but it does prohibit arbitrary and unreasonable governmental action. *Bowers v. DeVito, supra.*

### (2) *Procedural Due Process*

Procedural due process means the procedure used in effecting or denying one's fundamental or constitutional rights. Procedural due process is only concerned with the provision and fairness of the pro-

cedures, i.e., notice and hearing, assuming a fundamental right is alleged to have been denied. Procedural due process is the process which government provides prior to depriving individuals of their interests in life, liberty, or property. If the procedure is fair and reasonable, and if there is adequate notice and a fair hearing, there has been procedural due process. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

### LIBERTY—PROPERTY

■ The terms "liberty" and "property" in the Fifth and Fourteenth Amendments are not expressly defined. But a liberty right means more than freedom from personal restraint, *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), and a property right means more than ownership and possession of real and personal property. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by the existing rules or understandings that stem from an independent source such as state law....'" *Cleveland Board of Education v. Loudermill, supra,* 470 U.S. at p. ——, 105 S.Ct. at p. 1491, 84 L.Ed.2d at p. 501, quoting from *Board of Regents v. Roth, supra,* 408 U.S. at p. 577, 92 S.Ct. at 2709.

■ Liberty extends to the full range of conduct which an individual is free to pursue and which cannot be restricted absent proper governmental objective. *Bolling v. Sharpe, supra.*

While the Supreme Court has not attempted to define with exactness the liberty interests guaranteed by the Fourteenth Amendment, the term "... denotes not merely freedom from bodily restraint but also the right of an individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska, supra.*

■ One's liberty interests may not be interfered with by governmental action under the guise of protecting the public interest when that governmental action is arbitrary or is without reasonable relationship to some purpose within the competency of the state to effect. Governmental action is not final or conclusive but is subject to supervision by the courts. Individuals have certain fundamental rights which must be respected. *Id.* 262 U.S. at p. 400, 43 S.Ct. at p. 627.

In the present case, we are concerned with an alleged interference with a father's rights to visit his children.

■ While not expressly stated in the United States Constitution or its Amendments, it has been well established that parents do have a constitutionally-protected liberty interest in the "companionship, care, custody, and management of his or her children" which "undeniably warrants deference and, absent a powerful countervailing interest, protection." *Lassiter v. Department of Social Services,* 452 U.S. 18, 26, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

As stated in *Lassiter, supra,* "... although the Constitution is verbally silent on the specific subject of families, freedom of personal choice in matters of family life long has been viewed as a fundamental liberty interest worthy of protection under the Fourteenth Amendment." *Id.* 452 U.S. at 38, 101 S.Ct. at 2165.

### COMMON LAW TORT—CONSTITUTIONAL TORT

#### (1) *Common Law Tort*

■ A private or civil wrong or injury, other than a breach of contract for which the state court will provide a remedy in the form of an action for damages is a common law tort. The elements of a tort are the

existence of a legal duty from a defendant to a plaintiff, breach of the duty, and a damage as a proximate result. *Black's Law Dictionary*, 1660 (4th Ed.1968).

### (2) *Constitutional Tort*

■ Any person who, under color of any statute, ordinance, regulation, custom, or usage of a State or Territory, deprives an individual of any rights, privileges or immunities secured by the Constitution and laws has committed a constitutional tort.

The threshold question to be addressed is what violations/deprivations are to be considered common law torts for which an available and adequate state remedy must be pursued, thus precluding an individual from maintaining a § 1983 cause of action, and what violations/deprivations are to be considered constitutional torts for which a § 1983 cause of action can be maintained, despite the availability of state remedies?

■ "[N]ot every state law tort becomes a federally cognizable 'constitutional tort' under § 1983 simply because it is committed by a state official." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980); citing to *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). "Section 1983 imposes liability for violation of rights protected by the Constitution, not for violations of duties of care arising out of tort law," the latter remedy being available in state court, *Baker v. McCollan, supra,* at p. 146, 99 S.Ct. at 2695.

An example of the difference between a common law tort and a constitutional tort may be found in the case of medical treatment for a prisoner. Ordinary medical malpractice is considered to be a matter of state tort law. As stated in *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), "[m]edical malprac-

tice does not become a constitutional violation merely because the victim is a prisoner...." Neither would negligent injury to a prisoner caused by a state actor rise to the level of a violation of one's liberty interest, particularly where the prisoner has available to him a common law tort action under state law. *See Daniels v. Williams,* 748 F.2d 229, 232 (4th Cir.1984).

■ However, if the treatment in the prison amounted to a deliberate indifference which would offend the standards of decency, there would be a constitutional deprivation in violation of the Eighth Amendment for cruel and unusual punishment.[9]

A slight shove or push by a state actor is not action which is so abhorrent so as to "shock the conscience," *Rochin v. California, supra,* as would be the case of excess force used by law enforcement officers in effecting an arrest. The latter action would have viability as a constitutional tort because of the recognized substantive due process right to enjoy the security of life and limb. *Brandon v. Allen, supra; Wilson v. Beebe,* 743 F.2d 342 (6th Cir.1984), whereas the former conduct would have viability, if at all, solely under state tort law in an assault and battery action.

Nevertheless, although an assault and battery may not give rise to a § 1983 cause of action, the Supreme Court has, through the years, recognized an individual's substantive liberty right to bodily security,[10] for which a § 1983 cause of action can be maintained.

■ The standards applied by the Courts to the conduct of state actors to distinguish conduct which constitutes a constitutional tort from that which gives rise to a common law tort have been defined by various terms, words and phrases. The type of conduct by a state actor which

---

**9.** *See Hughes v. Blankenship,* 672 F.2d 403, 406 (4th Cir.1982); *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *Daniels v. Gilbreath,* 668 F.2d 477, 488 (10th Cir.1982).

**10.** *Baker v. McCollan, supra; Paul v. Davis, supra; Rochin v. California, supra; see also Wilson v. Beebe, supra; Johnson v. Glick,* 481 F.2d 1028 (2nd Cir.1973); *Jenkins v. Averett,* 424 F.2d 1228 (4th Cir.1970).

rises to the level of a constitutional tort is "action that offends the standards of decency," "callous indifference," "reckless conduct," "excessive force."[11] The Supreme Court has characterized conduct which "shocks the conscience." *Rochin v. California, supra. See also Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973).

The Sixth Circuit has recognized a distinction for § 1983 purposes between a procedural due process case and a substantive due process case when there has been such aggravated conduct by the state actor. The Sixth Circuit held that in procedural due process cases, when there is an adequate state remedy, a § 1983 action cannot be maintained, *Vicory v. Walton,* 721 F.2d 1062 (6th Cir.1983), *rehearing en banc denied,* 730 F.2d 466 (6th Cir.1984), however, when there has been a substantive due process violation resulting from the aggravated conduct of the state actor, despite the availability of state remedies, no such state remedy will be found adequate to compensate the plaintiff for the deprivation of his right to substantive due process, thus justifying the maintenance of a § 1983 cause of action. *Wilson v. Beebe, supra; see also Eaton v. Solon, supra.*

## SUPREME COURT'S TREATMENT OF THE DISTINCTION BETWEEN EXPRESS CONSTITUTIONAL RIGHTS AND DUE PROCESS CASES

The Supreme Court of the United States has drawn a distinction between violations of express constitutional rights and due process violation cases by treating due process violations differently than express constitutional violations.

When *Parratt v. Taylor* was decided, the Supreme Court had its choice of following *Monroe v. Pape* and permitting a § 1983 cause of action to be maintained in Federal Court or distinguishing the procedural due process cases. It chose to do the latter, employing the rationale that since the state affords an adequate remedy by established administrative procedures, the plaintiff has not been denied his property interest without due process and that is all the process that is due, and a § 1983 action cannot be maintained.

## SUMMARY

■ In summary, if a § 1983 action alleges a violation of a procedural due process right, involving either a liberty or property interest, for which there is an adequate state remedy, then a § 1983 action may not be brought in the federal courts and resort must be made to the available state remedy. *Ingraham v. Wright, supra; Board of Regents v. Roth, supra; Vicory v. Walton, supra; Eaton v. City of Solon, supra.*

■ If a § 1983 action alleges a substantive due process violation which does not rise to the level of a constitutional tort, i.e., does not "shock the conscience," and there is an adequate state remedy available, then a § 1983 action may not be brought in the federal courts and resort must be made to those state remedies. *Id.*

■ Needless to say, a § 1983 action alleging a violation of an express constitutional right may be pursued in the federal courts. If, however, a § 1983 action alleges a substantive due process violation, wherein the state actor's conduct is "abhorrent" or "shocks the conscience," then regardless of the available state tort remedies, the action rises to the level of a constitutional tort and a § 1983 action may be brought in the federal courts. *Wilson v. Beebe, supra.*

■ Stated another way, a party may maintain a procedural due process § 1983 case in federal court if he alleges and proves that there was a constitutional violation under color of law and:

1. The state did not have any remedy; or

---

**11.** *See Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 1638, 75 L.Ed.2d 632 (1983); *Youngberg v. Romeo,* 457 U.S. 307, 315–316, 102 S.Ct. 2452, 2457–2458, 73 L.Ed.2d 28 (1982); *Bell v. Wolfish,* 441 U.S. 520, 535–537, 99 S.Ct. 1861, 1871–

1873 (1979); *Hall v. Tawney,* 621 F.2d 607 (4th Cir.1980); *also see City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983).

2. The state had a remedy but it was deemed inadequate; or

3. The state had an adequate remedy in form, both procedurally and in damages, but the state did not apply it or it misapplied its remedy. *See City of Oklahoma City v. Tuttle,* —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Parratt v. Taylor, supra; Cleveland Board of Education v. Loudermill, supra; Vicory v. Walton, supra.*

■■ A § 1983 action can be maintained for an express constitutional violation such as an unreasonable seizure under the Fourth Amendment. A § 1983 case can also be maintained for a substantive due process violation where the state actor's conduct shocks the conscience. Under these circumstances, the adequacy of the state remedy is irrelevant. *See Tennessee v. Garner,* 471 U.S. ——, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); and *Wilson v. Beebe, supra.*

■■ It is also noted, but not relevant to this case, that an excessive force type case such as when an arrest is made by a police officer may be brought under either the Fourth Amendment as an unreasonable seizure as in *Tennessee v. Garner, supra,* or as a substantive due process violation as in *Wilson v. Beebe, supra.*

Having discussed the foregoing terms, it is necessary to understand how the issues are raised in order to maintain a § 1983 case.

## ALLEGATIONS NECESSARY TO MAINTAIN A § 1983 CASE

It is the allegations in the pleadings which raise the issues in a case. It is therefore critical for a plaintiff who wants to maintain a § 1983 cause of action to make the proper allegations or he will be subject to a motion to dismiss.

■■ In cases involving an alleged violation of an express substantive constitutional right, it is only necessary to allege that there was a deprivation of a constitutional right under color of law. It is not neces-sary to allege inadequacy of the state remedy because that is not a condition precedent to maintaining a § 1983 action.

■■ In procedural due process cases, however, the plaintiff must allege and prove at trial that: (1) there was a deprivation of a constitutional right; (2) that it was under color of law; and (3) the state remedy was inadequate, both in form and in substance.

In some cases, a plaintiff may allege violations of procedural due process, and in others allege violations of substantive due process, or both procedural and substantive violations. In procedural due process cases, a plaintiff will usually allege that as a result of a denial of procedural due process he was deprived of a substantive constitutional right. In what are commonly called procedural due process cases, it is the procedural aspect of the case that is primarily attacked because it was the denial of procedural due process that resulted in the deprivation of the substantive constitutional right.

In a pure substantive due process case, it is usually alleged that the plaintiff has an express substantive constitutional right that was infringed upon by unreasonable or arbitrary governmental action, and thus a violation of a substantive constitutional right for which a § 1983 action can be maintained.

## ADEQUATE STATE REMEDY

The Sixth Circuit has held in *Vicory v. Walton, supra,* interpreting *Parratt v. Taylor, supra,* "that for purposes of § 1983 damage suits, a claim for deprivation of a property interest without due process of law has not been stated unless the plaintiff has *pleaded and proved that the state remedy for redressing the wrong is inadequate.*" (Emphasis added.)

■■ Therefore, in a procedural due process case in which the state remedy is considered to be adequate, a § 1983 action cannot be maintained. Adequate state remedies in due process cases include both pre and post deprivation procedures, and

both administrative and judicial. The "... fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), *quoting Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

## CONCLUSION

Plaintiff father asserts in this action that his constitutionally-protected liberty interest in visiting his children has been denied him without due process. This denial of due process he alleges resulted from the failure of the Welfare Department and its employees to conduct a timely investigation of the report of child abuse against him, provided for in Ohio Rev.Code Ann. § 2151.421, and resulted in his having been denied visitation rights with his children by Domestic Relations.

Having reviewed the operative facts, the relevant Ohio law, as well as the evolution of the law regarding § 1983, this Court must determine whether or not plaintiff father was denied his fundamental liberty interest, as a parent, to visit his children, under color of law, without due process.

Upon consideration, the Court concludes, for the reasons which follow, that there is no genuine issue of material fact, and that the defendants are entitled to judgment as a matter of law, pursuant to Fed.R.Civ.P. 56.

Initially, the Court notes that the Domestic Relations Court, which denied plaintiff his right of visitation with his children, is not a named party to this litigation. Domestic Relations is an entity which is separate and distinct from the Welfare Department, having neither a direct nor indirect relationship with the Welfare Department. As set forth, *supra*, the Domestic Relations Court has exclusive jurisdiction over divorce, annulment, and alimony actions (Ohio Rev.Code Ann. § 3105.011), the awarding of custody of minor children (Ohio Rev.Code Ann. § 3109.04), as well as providing for their support and permitting

visitation of the children by the parent who has been deprived of their care, custody, and control (Ohio Rev.Code Ann. § 3109.-05).

Pursuant to the Ohio statutes, the Domestic Relations Court has established procedures to conduct investigations, when necessary, to receive reports and recommendations from trial referees, for the filing of objections to the reports and recommendations to the court by the parties, and for the court to make its decision by judgment entry. In summary, as it relates to the facts of this case, the domestic relations statutory scheme establishes both administrative and judicial proceedings to determine who shall have custody of the minor children, as well as visitation rights, both prior to and subsequent to the granting of a divorce.

Built into this statutory scheme is the constitutional protection that a parent's right to the custody of a minor child cannot be terminated without due notice to the parent and an opportunity to be heard.

The Ohio statutory scheme also provides for an appeal as of right from any final order of the Domestic Relations Court to the state court of appeals and the Supreme Court of Ohio, respectively. This entire statutory scheme for Domestic Relations matters has built-in both pre and post divorce decree administrative and judicial remedies which provide "due process," all of which were readily available to the plaintiff to redress the denial to him of his right to visit with his children.

The Welfare Department of the various counties has been given the authority by the state legislature to receive reports of suspected child abuse, investigate the reports, and make recommendations to the prosecutors or law directors of municipalities when it is warranted. Pursuant to the statute and regulations adopted, the investigation must be started within 24 hours after receipt of a report of suspected child abuse and completed within 30 days.

There is not an express provision in the statute requiring the Welfare Department

to report either the receipt of a report of suspected child abuse/neglect or the results of its investigation to the Domestic Relations Court. There is no statutory link, either directly or indirectly, between the Welfare Department's duty, pursuant to Ohio Rev.Code Ann. § 2151.421 to investigate alleged reports of suspected child abuse and/or neglect and the Domestic Relations Court's duties in awarding custody and rights of visitation.

Plaintiff father attempts to persuade the Court that the reporting of alleged child abuse and/or neglect with the Welfare Department and its subsequent investigation and recommendation, totally controls the discretion of Domestic Relations Court in awarding custody and modifying or terminating custody or visitation rights. This argument is totally lacking in merit.

■ Because the Welfare Department only receives reports of suspected abuse/neglect, investigates and reports instances of alleged child abuse to the county prosecutor and/or law director, it cannot be said that the failure to complete the investigation within 30 days was the proximate cause of the denial by Domestic Relations of the visitation rights of the plaintiff with his minor children.

The jurisdiction of domestic relations court to award, modify, or terminate custody or rights of visitation is totally within its exclusive jurisdiction as stated, *supra.*

Ohio Rev.Code Ann. § 2151.421 was adopted by the Ohio legislature solely for the purpose of protecting minor children from abuse and/or neglect, to prevent any further neglect or abuse of children, to enhance and protect children's welfare, and where possible, to preserve the family unit intact. Responsibility for following up on the reports of suspected abuse and/or neglect, to conduct investigations and to make recommendations to law enforcement agencies is vested exclusively in the Welfare Department. Ohio Rev.Code Ann. § 2151.421 by no means vests responsibility or authority in the Welfare Department to determine custody of minor children, visitation, etc.

Ohio Rev.Code Ann. § 2151.421 only provides that the Welfare Department will investigate, report, and make recommendations to the County Prosecutor or the City Director of Law as it deems necessary to protect such children. That is all that Ohio Rev.Code Ann. § 2151.421 provides.

Inasmuch as the County Welfare Department does not control the custody of minor children or the awarding of visitation rights, its failure to conduct the investigation within 30 days did not, under the facts in this case, result in the termination by Domestic Relations Court of plaintiff's visitation rights.

■ In addition, this Court has set forth the law in regard to § 1983 and has concluded that in a liberty procedural due process case, when there are established pre and/or post deprivation state procedures that are fair and reasonable and provide what can be considered an adequate remedy, due process has been afforded and a § 1983 case cannot be maintained.

Under the Ohio statutory scheme, there is available both a pre and post deprivation procedure, administrative and judicial, in the Domestic Relations Court to determine a parent's right of visitation. This is due process.

During the pendency of the divorce or alimony litigation, temporary custody and visitation is provided for after investigation, recommendation, and a court decision. After the divorce, the award of custody, and the right of visitation, the court's decision can be appealed judicially in the Ohio court system.

Also, the Domestic Relations Court has continuing jurisdiction over the custody and visitation rights until minor children become 18 years of age.

The Ohio statutory scheme provides for an opportunity for either parent to file objections or motions to change custody or the right of visitation and provides for notice and a fair hearing and a decision which may be appealed.

The foregoing constitutes procedural due process that protects a party's liberty interest in visitation. The foregoing is considered an adequate state remedy and, thus, a § 1983 action cannot be maintained regarding a denial of visitation rights of a parent.

In regard to the conduct of the Welfare Department, this Court deems it important to make some comment.

There is no question that Ohio Rev.Code Ann. § 2151.421 imposes a mandatory duty to initiate the investigation within 24 hours after receiving the report of abuse/neglect, and that the regulations set forth in the Ohio Administrative Code, which this Court finds to be fair and reasonable, provide that the investigation shall be completed within 30 days.

Based upon the undisputed evidence before this Court, the Welfare Department did not meet its statutory and mandated duty to complete its investigation into the report of child abuse within 30 days. The report of abuse was received on November 9, 1981, yet the file was not closed until August 30, 1982, some 10 months later. It is also undisputed that the Welfare Department did not use all means available and methods authorized by law to conduct an independent, objective investigation. On the contrary, it permitted Mrs. Cifranic and Dr. Steckler, who initially made the report of abuse to the Welfare Department, to totally frustrate and hamper the investigation, so that, in fact, there was no investigation at all, in contravention of Ohio Revised Code Ann. § 2151.421. The Welfare Department had the tools at hand, pursuant to the statute, to force these individuals to cooperate and to obtain whatever information was needed to complete their investigation in an expeditious manner pursuant to the statute and the rules. Instead, the Welfare Department first considered dismissing the report of abuse due to the lack of cooperation by Mrs. Cifranic and later ultimately closed the case "... due to the lack of movement...."

When a governmental agency does not act in accordance with its statutory man-

date, that agency can be forced to act. First, a request can be made, and then if there is no action, a demand can be made. If there is still no action, a party may maintain a mandamus action, pursuant to Chapter 2731, R.C. Although a mandamus action cannot be used to get a desired result, it can be used to force a governmental agency to take action when there is a clear legal duty to act and yet fails to do so.

It is indeed unfortunate that the Welfare Department did not meet its statutory duty and responsibility as set forth above. That this should have happened, and that the investigation should have been delayed for 10 months is regrettable. Nevertheless, it cannot be said that it was the Welfare Department's failure to meet its statutory obligations which resulted in the deprivation of plaintiff's constitutional liberty right to visit his children, under color of law and without due process. Accordingly, plaintiff cannot maintain a § 1983 action against the County Commissioners and the County Welfare Department and its employees for their failure to timely conduct the investigation.

Plaintiff has alleged in the third and final count of his complaint that the defendant Welfare Department illegally and without authority withheld his wages for an alleged child support arrearage in the amount of $122.46, based upon a letter from the Domestic Relations' referee to the Welfare Department.

Ohio Rev.Code Ann. § 3113.21 sets forth the procedure to be followed in withholding personal earnings to pay child support arrearages in instances where "... it appears to the court making the order that the person ordered to pay the support has failed to make payments in accordance with the order...."

Once again we are found with a § 1983 cause of action alleging a procedural property due process violation. Inasmuch as this is a § 1983 case, there must be an allegation and proof of a deprivation of a constitutional right by a state actor, under

color of law, without an adequate remedy. *Vicory v. Walton, supra.*

At most, plaintiff has alleged a procedural property due process violation, although he has failed to allege the nonavailability of an adequate state remedy. However, the record indicates that there is an adequate state remedy available to the plaintiff.

It is the conclusion of this Court that there are no genuine issues of material fact, and the County defendants are entitled to judgment as a matter of law as to Counts I, II, and III of plaintiff's complaint. The County defendants' motions for summary judgment are hereby granted. Accordingly, plaintiff's motion for summary judgment is overruled. Further, plaintiff's motion for preliminary and permanent injunctions and for class certification are also overruled, as are plaintiff's pendent state claims which are hereby dismissed. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

DR. STECKLER'S MOTION TO DISMISS/SUMMARY JUDGMENT

In response to the plaintiffs' complaint, the defendant, Dr. Jane T. Steckler, has filed both a motion to dismiss and for summary judgment.

Dr. Steckler has several bases for her motions. First, she alleges that, as a matter of law, she is immune from prosecution, either civilly or criminally, under Ohio Rev. Code Ann. § 2151.421. Second, she alleges that she is not a state actor, but rather, a private citizen and, therefore, cannot be liable under 42 U.S.C. § 1983.

This Court finds that the defendant, Dr. Jane T. Steckler, is correct in both assertions.

■ Ohio Rev.Code Ann. § 2151.421 lists various organizations and professional persons who have a mandatory duty to report instances of child abuse. Licensed psychologists are listed among those who have such a duty. The defendant, Dr. Jane T. Steckler, is a licensed psychologist who met with Ani Haag and her mother, Judy Cifranic, in October of 1981, and made her report to the County Welfare Department in November of 1981, in accordance with the requirements of Ohio Rev.Code Ann. § 2151.421.

Ohio Rev.Code Ann. § 2151.421 expressly provides that anyone making a report of child neglect and/or abuse or participating in a judicial proceedings resulting from the report, pursuant to Ohio Rev.Code Ann. § 2151.421, is immune from any civil or criminal liability that might otherwise be incurred or imposed as a result of such actions.

Because Dr. Steckler made the mandatory report pursuant to Ohio Rev.Code Ann. § 2151.421, she is immune from any civil prosecution.

Dr. Steckler's second argument is that she cannot be liable under 42 U.S.C. § 1983, because she is not a state actor.

■ Title 42, U.S.C. § 1983 as set forth above, states that whenever a person's constitutional rights are violated under color of law there is liability. In order for there to be liability under 42 U.S.C. § 1983, the deprivation must result from the action of a state actor. A private person is not a state actor, and there can be no liability under 42 U.S.C. § 1983.

Under the facts in the present case, the Court finds the defendant Dr. Jane T. Steckler to be a private person and, therefore, not a state actor. Accordingly, a § 1983 action cannot be maintained against her.

Finally, because the Court has decided that the plaintiff cannot maintain a § 1983 action against the County, County Commissioners, and the County Welfare Department and its employees, because their conduct did not result in a constitutional violation under color of law, the defendant Dr. Jane Steckler also cannot be held liable under 42 U.S.C. § 1983, for the same reason.

The defendant Steckler's motion to dismiss/summary judgment is well taken and is granted.

IT IS SO ORDERED.

**284**

JUDGMENT ENTRY

The Court having filed its memorandum of opinion and order granting defendants' motions for summary judgment against the plaintiff and overruling plaintiff's motion for summary judgment,

IT IS ORDERED that judgment is hereby entered for the defendants, Cuyahoga County, Cuyahoga County Welfare Department, Virgil Brown, Vincent Campanella, Timothy Hagan, Marjorie Hall-Ellis, Nancy Graff, Lenita Brooks, Andrea Goodlow, Mamie Hicks, Christopher Wentz, and Dr. Jane T. Steckler, and against the plaintiff, Robert Haag. Plaintiff to pay all costs.

IT IS SO ORDERED.