Faith D. ELLIOTT, et al., Plaintiffs,

v.

**NEW MIAMI BOARD OF EDUCATION,**
et al., Defendants.

No. C–1–91–606.

United States District Court,
S.D. Ohio, W.D.

April 30, 1992.

Mary K. Carrothers Soter, Dayton, Ohio, for plaintiffs.

John Michael Fischer, Ennis, Roberts and Fischer, Cincinnati, Ohio, David Theodore Davidson, Baden, Jones, Scheper & Crehan, Hamilton, Ohio, Timothy McCutcheon Ruttle and Christine Davenport Krebs, Cincinnati, Ohio, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

SPIEGEL, District Judge.

This matter is before the Court on the Defendants' motion to dismiss (doc. 24), the Plaintiffs' response (doc. 25), and the Defendants' reply (doc. 26).

The issue before this Court is whether a high school student at a public school has a cause of action under § 1983 when the student has been repeatedly harassed and assaulted by her classmates and the school authorities have failed to take action to protect her.

### BACKGROUND

The Plaintiffs in this case are Faith Elliott, and her mother, Joyce Elliott. The Defendants are the New Miami Local School District, the New Miami Board of Education and its members, the Interim Superintendent, the Treasurer, and the Principal of New Miami High School.

Faith Elliott was a freshman at New Miami High School ("New Miami") from August, 1990 to June, 1991. During this school year, according to the Plaintiffs, students at New Miami repeatedly harassed and assaulted Ms. Elliott. The principal of the school and teachers of the school witnessed several of the attacks, the Plaintiffs aver. The Plaintiffs elaborate that school authorities made no effort to stop the students from assailing Ms. Elliott, despite Faith and Joyce Elliott's repeated requests for help.

The Defendants have moved to dismiss this lawsuit under Fed.R.Civ.P. 12(b)(6). Therefore, we have accepted the Plaintiffs' allegations as being true for the purposes of deciding the Defendants' motion to dismiss. We now examine the sufficiency of the Plaintiffs' allegations as stated in their Complaint.

### STANDARD OF REVIEW

■■■■ This Court has before it a motion to dismiss for "... failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). In reviewing a motion to dismiss, this Court must accept as true all allegations in the complaint. *Westlake v. Lucas*, 537 F.2d 857 (6th Cir.1976). Then, the Court must determine whether the Plaintiff's allegations, when accepted as true, are sufficient to proceed with the lawsuit. Thus, a motion to dismiss should not be granted " '... unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* at 858 (quoting *Conley v. Gibson*, 355 U.S. 41, 45, 46, 78 S.Ct. 99, 102, 102, 2 L.Ed.2d 80 (1957).

### DISCUSSION

Faith Elliott and her mother have brought suit arising under 42 U.S.C. § 1983 (1991). Specifically, the Plaintiffs claim that they were deprived of their rights under the U.S. Constitution. The Defendants have moved to dismiss the Plaintiffs' claims under Fed.R.Civ.P. 12(b)(6).

■■■■ In § 1983, Congress imposed liability upon one

... who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws....

42 U.S.C. § 1983. In other words, in a § 1983 action, the defendant must have deprived the plaintiff of his or her constitutional or federal rights while the defendant was acting under color of state law. Thus, courts should only impose liability under § 1983 for violation of rights protected by the Constitution or the laws of Congress, not for violations of duties of care arising out of state tort law. *See e.g., Haag v. Cuyahoga County,* 619 F.Supp. 262 (N.D.Ohio 1985), *affirmed,* 798 F.2d 1414 (6th Cir.1986). State courts have the responsibility to remedy state claims in tort. *Id.*

■ Our parent court, the United States Court of Appeals for the Sixth Circuit, has further elaborated that "[s]imple negligence is not sufficient to support a civil rights action for the violation of constitutional rights." *Ghandi v. Police Dept. of the City of Detroit,* 823 F.2d 959, 963, n. 2 (6th Cir.1987), *cert. denied, Ghandi v. Fayed,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988) (citing *Hayes v. Jefferson County,* 668 F.2d 869, 872–874 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982)).

Courts, however, have considered § 1983 liability for public schools which have failed to take action to protect a student based upon two theories: (1) constitutional duty analysis; and (2) policy, custom or practice analysis. *See* William D. Vallente, "School District and Official Liability for Teacher Sexual Abuse of Students under 42 U.S.C. § 1983," 57 *W.Educ.L.Rep.* 645 (1990) (discussing § 1983 liability on schools); *see also* James A. Rapp, "Constitutional Right to Safe Schools," 3 *Education Law* § 12.-06[7][a] (1991) (general discussion of whether children have a constitutional right to safe schools). We will consider in turn these two theories of liability under § 1983.

### Constitutional Duty Analysis

This theory contends that teachers and administrators have an affirmative constitutional duty to protect students because the school has a "special relationship" with its students. In the matter before this Court, the Defendants argue that they did not have a "special relationship" with the Plaintiffs, and therefore that they had no duty to protect Faith Elliott from the harm she received from her classmates.

The Supreme Court has established that § 1983 liability may be imposed upon the state for the actions of third parties depriving the plaintiff of life, liberty, or property when the state has a special relationship with the plaintiff. *DeShaney by First v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Courts have determined that state officials have a "special relationship" with prison inmates and institutionalized mental patients. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (in certain circumstances the Constitution imposes on the state affirmative duties of care for prisoners); *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (holding that Constitutional affirmative duty of care arises for institutionalized mental patients). When a "special relationship" arises, the state has an affirmative duty to protect the plaintiff from harm, even if the direct cause of that harm is a private actor. The issue before this Court is whether such a relationship arises between the state and students in a public school.

■ Based upon the Supreme Court's decisions in *DeShaney, Estelle,* and *Youngberg,* the state has an affirmative duty to take action to protect a person when the state has directly prevented that individual from taking action to protect himself. The Supreme Court noted that

[i]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney,* 489 U.S. at 200, 109 S.Ct. at 1006.

The Elliotts argue that the state has a special relationship with students in public schools, thereby triggering the state's affirmative duty to protect these students. The Plaintiffs note that Faith Elliott is compelled to attend school in Ohio. *See* Ohio Rev.Code Ann. § 3321.02 (Page's 1992) (requiring school attendance of children in Ohio). Therefore, the Plaintiffs argue that just as the state has a special relationship with prisoners and patients of mental institutions, so too does the state have a special relationship with students at public schools.

Several courts have considered whether the state has a special relationship with students in public schools. The United States Court of Appeals for the Third Circuit heard a similar case to the one that is now before this Court. *D.R. v. Middle Bucks Area Vocational and Technical Sch.*, Nos. 91–1136, 91–1137, 1991 WL 276292, 1991 U.S.App. LEXIS 30323 (3rd Cir. Dec. 31, 1991).[1] In *D.R.*, the plaintiffs were two female students at a public school who were enrolled in a graphic arts class. They alleged that several male students physically, verbally, and sexually molested them during this graphic arts class. The plaintiffs in *D.R.* did not claim to have informed the appropriate teacher of the abuse by the male students; however, they averred that despite one of the plaintiffs informing the assistant director of the school, the school never took corrective action. The plaintiffs argued in their lawsuit that the teacher knew or should have known that males in the class were abusing the plaintiffs, because the teacher witnessed a variety of misconduct by these same male students. *Id.* 1991 WL 276292 at *1, 1991 U.S.App. LEXIS 30323 at *4. The plaintiffs brought suit against the school district and various administrators of the school under § 1983.

The *D.R.* court faced "... whether ... state compulsory attendance laws so restrain school children's liberty that plain-

tiffs can be considered to have been in state 'custody' during school hours for fourteenth amendment purposes." *Id.* 1991 WL 276292 at *4, 1991 U.S.App. LEXIS 30323 at *11. The *D.R.* court answered negatively:

> Students ... do not depend upon the schools to provide for their basic human needs. Instead, parents or others remain a child's primary caretakers. To the extent that the child is able to take care of himself or herself, attending school does not effectively preempt that responsibility. Schoolchildren, like the institutionalized, may complain to officials, however, unlike prisoners and mental patients, they may also turn on a daily basis to others such as their parents for help. By requiring plaintiffs to attend assigned classes, the school defendants did not cut off all meaningful sources of help for those in plaintiffs positions.

*Id.* 1991 WL 276292 at *6, 1991 U.S.App. LEXIS 30323 at *16, *17.

The United States Court of Appeals for the Seventh Circuit reached a similar conclusion in *J.O. Alton Community Unit Sch. Dist. 11*, 909 F.2d 267 (7th Cir.1990). In *J.O.*, the students and their parents sued Alton public schools and its officials under § 1983, because a teacher at Alton public schools sexually molested some of the students. The plaintiffs argued that the school defendants had a special relationship to the children, and therefore that the school had an affirmative duty to protect the children. *Id.* at 272. The court disagreed:

> We do not suggest that prisoners and mental patients are an exhaustive list of all persons to whom the state owes some affirmative duties, but the government, acting through local school administrations, has not rendered its schoolchildren so helpless that an affirmative constitutional duty to protect arises. Whatever

---

**1.** Approximately one month after deciding this case, the Third Circuit vacated its judgment and granted a rehearing *en banc*. *D.R. v. Middle Bucks Area Vocational and Technical Sch.*, Nos. 91–1136, 91–1137, 1991 WL 276292, 1992 U.S.App. LEXIS 899 (3rd Cir. Jan. 24, 1992). However, we still find the reasoning of both the majority and the dissent merits discussion to help resolve the issue before this Court.

duty of protection does arise is best left to laws outside the Constitution....

The state's custody over their person is the most distinguishing characteristic in the cases of the mental patient and the prisoner; these people are unable to provide for basic human needs like food, clothing, shelter, medical care, and reasonable safety. At most, the state might require a child to attend school, but it cannot be suggested that compulsory school attendance; makes a child unable to care for basic human needs. The parents still retain primary responsibility for feeding, clothing, sheltering, and caring for the child. By mandating school attendance for children under the age of sixteen, the state of Illinois has not assumed responsibility for their entire personal lives; these children and their parents retain substantial freedom to act. The analogy of a school yard to a prison may be a popular one for school-age children, but we cannot recognize constitutional duties on a child's lament. Schoolchildren are not like mental patients and prisoners such that the state has an affirmative duty to protect them.

*Id.* at 272, 273 (citations omitted); *see also Doe v. Douglas County Sch. Dist. Re–1,* 770 F.Supp. 591, 593, 594 (D.Colo.1991) (holding that public school did not have a special relationship with student so as to impose affirmative duty on the school to protect student from sexual abuse by school psychologist); *Stauffer v. Orangeville Sch. Dist.,* No. 89–C–20258, 1990 WL 304250, at *5, 1990 U.S.Dist. LEXIS 19133, at *12 (N.D.Ill. May 17, 1990) (concluding that public school does not have a special relationship with student; otherwise, "... every time a school child is assaulted by the class bully during recess there would be a tort of constitutional dimensions under § 1983").

Nevertheless, one court reached a different conclusion. *Pagano by Pagano v. Massapequa Pub. Sch.,* 714 F.Supp. 641 (E.D.N.Y.1989). In *Pagano,* the plaintiff was a sixth grade student at the Massapequa public school. He alleged that during the fifth grade and part of his year in the sixth grade, he was physically and verbally abused by other students a total of seventeen times. He further alleged that school officials were aware of the attacks and expressly said they would take the necessary steps to prevent such attacks in the future. The plaintiff finally contended that despite the defendant's promises to the contrary, the defendants never took action to protect him and provide him safe access to his public school. The *Pagano* court denied the defendants' motion to dismiss, because

> [w]e consider elementary school students who are required to attend school, the truancy laws still being in effect, to be owed *some* duty of care by defendants which may or may not rise to the level required.... However, plaintiff has stated a sufficient claim to withstand a motion to dismiss at this time.

*Id.* at 643 (emphasis in original).

Similarly, the dissent in *D.R.*[2] contended that because students are legally compelled to attend school, a special relationship arises between the school and the students. *D.R.,* Nos. 91–1136, 91–1137, 1991 WL 276292, 1991 U.S.App. LEXIS 30323 (Sloviter, C.J., dissenting). Chief Judge Sloviter noted that during school hours, a student's position is analogous to that of an inmate or prisoner. The school has the right to restrict the student's freedom of movement and to discipline the student upon misbehavior. Therefore, Chief Judge Sloviter concluded that public schools cannot adopt "... the position of the three monkeys who see, hear and speak no evil," but rather must be held accountable under the U.S. Constitution when students are harassing another student. *Id.* 1991 WL 276292 at *8, 1991 U.S.App. LEXIS 30323 at *23.[3]

**2.** The facts and majority decision of *D.R.* are discussed on page 821 of this Order.

**3.** We reiterate that the judgment in *D.R.* has been vacated as the Third Circuit has granted a rehearing *en banc.* Thus, we have examined the dissent in *D.R.* to help this Court understand the issue that is before it.

■ We now turn our attention to the matter before this Court. While the state of Ohio has compelled Ms. Elliott to attend school, the state has not restricted her freedom or her parents' freedom to take action as it has with prisoners or patients of mental institutions. Students return home at the end of the school day, where they (or their parents) are free to act as any other person in our society. Prisoners and patients of mental institutions, on the other hand, do not have such rights. Furthermore, parents or guardians are the primary caretakers of students; whereas, the state is the primary caretaker of prisoners and patients of mental institutions. We recognize that the state certainly has a unique relationship with students of public schools; however, it is not the special relationship which the state has with prisoners and patients of mental institutions.

We conclude that New Miami does not have a special relationship with Faith Elliott. Therefore, New Miami's failure to prevent its students from abusing Ms. Elliott does not give rise to a suit under § 1983 under that theory of liability.

*Policy, Custom, or Practice Analysis*

The second theory of liability under § 1983 is that a school district can be liable where school officials act with such deliberate or reckless indifference to known or reasonably discoverable harm occurring to students as to project a policy practice or custom that condones or encourages the abuse of a student. *See* Vallente, "School District and Official Liability for Teacher Sexual Abuse of Students under 42 U.S.C. § 1983," 57 *W.Educ.L.Rep.* 645.

■ Conduct is considered to be under color of state law if the state official is acting under an official policy or custom. *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *see also Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 725 ("[l]iability of municipal policymakers for policies or customs chosen or recklessly maintained is not dependent upon the existence of a 'special relationship' between the municipal officials and the individuals harmed"). Therefore, in the matter before this Court, the defendants may be liable under § 1983 if failing to protect Faith Elliott was part of a policy, custom, or practice by New Miami.

■ However, for a court to impose § 1983 liability for the state's policy, custom, or practice, the underlying violative acts must have been committed by state officials. The court in *D.R.* explained that "... section 1983 liability may not be ... [imposed] where private actors committed the underlying violative acts." *D.R.,* Nos. 91–1136, 91–1137, 1991 WL 276292 at *6, 1991 U.S.App. LEXIS 30323 at *18 (distinguishing the decision in *Stoneking,* 856 F.2d 594, because in that case, the underlying violative act was by state actors). As a result, the *D.R.* court upheld the district court's dismissal of the case, because the harm suffered by the plaintiffs was directly caused by the plaintiffs' fellow students. *D.R.,* Nos. 91–1136, 91–1137, 1991 WL 276292 at *6, 1991 U.S.App. LEXIS 30323, at *18.

■ In contrast, when an agent of the state commits the underlying violative act, then courts have imposed § 1983 liability when the state has a policy, custom, or practice of ignoring the violative act by the state agent. In *Doe,* for instance, the court held that the plaintiff had stated a claim under § 1983 when a school psychologist had committed the underlying violative act of sexually molesting the plaintiff, because the school may have had a policy, custom, or practice which caused the plaintiff's harm. *Doe,* 770 F.Supp. at 594; *see also Thelma D. v. Board of Educ. of City of St. Louis,* 669 F.Supp. 947, 949 (E.D.Mo. 1987) (concluding that a cause of action existed when the state exhibited "callous and deliberate indifference" to sexual abuse by a teacher).

■ In the matter before this court, Faith Elliott's classmates committed the underlying violative acts. These students were private actors, and thus were not in any way connected with the state of Ohio. Therefore, this Court cannot impose liabili-

ty upon New Miami for its policies, customs, or practices.

## CONCLUSION

The Plaintiffs in this case are unable to state a claim in federal court. Their cause of action simply does not rise to a constitutional level; rather, they allege a tort claim under state law.

Accordingly, the Defendants' motion to dismiss is hereby granted and this action is dismissed.

SO ORDERED.